# Trainer *v.* McGarrity, Appellant.

*Wills—Probate—Undue influence—Death of party—Practice, C. P.—Evidence.*

1. On an appeal from a judgment on a verdict sustaining a will, the appellants have no standing to complain of the action of the court in submitting the case to the jury, because one of the contestants was dead at the time of the trial and his representatives had not been substituted of record.

2. On the trial of an issue devisavit vel non where undue influence is alleged, it is not error to refuse to admit in evidence the will of the husband of the decedent, which gave to the latter a power which the contestants alleged was not properly exercised.

3. In such a case evidence that the decedent had executed a deed of land to the beneficiary, and that the latter was present when the decedent drew a certain sum of money from bank, is not sufficient to establish undue influence, where there is nothing to indicate that the conveyance was not a free and voluntary act of the decedent, and there is nothing to show what she did with the money which she had withdrawn from the bank; nor in such a case is it permissible to show that a priest who was alleged to have unduly influenced decedent, had been withdrawn from a church on charges that he had induced people to make and alter wills.

*Practice, C. P.—Trial—Mistake—Correction of mistake.*

4. Where counsel object to certain words used by the trial judge in his charge, and the latter immediately renews the instructions omitting the words objected to, and stating the law correctly, the use of such words, even though erroneous, is not a ground for reversing the judgment.

Argued Dec. 18, 1908. Appeal, No. 163, Jan. T., 1908, by Maternity Hospital et al., from judgment of C. P. No. 4, Phila. Co., Sept. T., 1903, No. 2,536, on verdict for plaintiffs in case of Edward Trainer and P. J. Flaherty, Executors, *v.* Catharine McGarrity et al. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Issue devisavit vel non. Before WILLSON, P. J.

At the trial the court refused to admit the will of John Loughran, decedent's husband.

When Catharine McGarrity was on the stand she was asked this question:

"Q. Did Mrs. Loughran, six months after you came to live with her at Fifteenth and Catharine streets, and eight months before her death, give you the property where you and she were living?"

The trial judge saying: By itself it amounts to nothing. I will sustain the objection at present. Whether it will be relevant later on is another question.

To which ruling the court granted contestants an exception. [3]

Contestants made this offer:

I offer in evidence the pass book of the Beneficial Savings Fund in order to establish that within twenty days after the book was received from Charles P. Bradley, according to his testimony, Mrs. Loughran, with Catharine Grogan, went to the savings fund and drew out, I think, $1,200, and a short time subsequently $5,000. That prior to the time when the book was taken over no drafts were made at all for a period of years, and that deposits were made to the number of six each year, to which ruling the contestants were granted an exception. [4]

P. J. Flaherty was asked this question:

"Q. Is it not true that your ecclesiastical faculties have been withdrawn as the result of the sentence of an ecclesiastical court after a regular hearing on charges preferred against you?"

Objected to. Objection sustained. Exception noted for respondents by direction of the court. [7]

"Q. Is it not true that you have been subject to frequent and repeated censures for misconduct in connection with thrusting yourself into the affairs of people and inducing them to make and alter wills?"

Objected to. Objection sustained. Exception noted for respondents by direction of the court. [8]

"Q. Are you not in default for large amounts as executor of two estates?"

Objected to. Objection sustained. Exception noted for respondents by direction of the court. [9]

10. The court charged the jury, inter alia, as follows:

[Before you can say that any undue influence from her was the cause of that will being what it was, you must be able to say that an undue influence, a poisoning influence, a prejudicing influence exercised by Catharine Grogan during the previous months or years had so affected the mind of Bridget Loughran toward some of her relatives that at the moment she was influenced by it, insanely influenced by it to make a will which she otherwise would not have made. And in declining to withdraw the said instructions, on objection being specifically made thereto by contestants, and in referring again to the same subject, in response to said specific objection, as follows:

Mr. Miller: I desire an exception to that part of your honor's charge in which you said that the condition of being influenced by Catharine Grogan and Father Flaherty must be that of being insanely influenced.

The Court: That is the very point you put to me.

Mr. Miller: I know I did, but there are two grounds.

The Court: I do not remember just what language I used in what I said to you in regard to the point which counsel now speaks of, but I say now that if you shall believe that Catharine Grogan's influence over the mind of Mrs. Loughran, in the confidential relation she occupied towards her, had been brought to bear upon the mind of Mrs. Loughran in such a way as to create prejudices, delusions or suspicions with regard to relatives who were omitted from the will, and that these prejudices, delusions or suspicions were the cause of those persons being omitted from the will, then that was undue influence which would invalidate the will. You are to reach the truth in regard to that question according to such lines of inquiry as I have already indicated, and after a full comparison and exchange of opinion on your part.

Mr. Miller requested exception "on the ground that your honor does not yet, as I understand, give the jury to understand that with regard to the matter of undue influence either general or delusional insanity is not essential."] [10]

Verdict and judgment for the will. Defendants appealed.

*Errors assigned* among others were (1) in submitting the case to the jury after one of the contestants had died; (2, 3, 4, 7, 8, 9) rulings on evidence, quoting the bill of exceptions, and (10) portion of charge as above, quoting it.

*E. Spencer Miller*, with him *Anthony A. Hirst*, for appellants.

*Henry A. Hoefler*, with him *Michael Francis Doyle*, for appellees.

OPINION BY HENDERSON, J., July 14, 1909:

Two questions were at issue in the trial of this case: (1) Was the testator of sound mind; (2) was the testator a subject of undue influence at the time of the execution of the will. The first was not pressed at the trial and it is not now contended that the evidence was sufficient to support a verdict on that ground. The real controversy was on the allegation of undue influence. Complaint is now made that the case should not have been submitted to the jury because one of the contestants named in the precept of the register had died in the meantime. No objection was made during the progress of the trial on that account, however; the interest of this deceased party is not represented in the appeal and the subject is not before us on the record. The appellants were not prejudiced in any way by the fact and have not shown us how they can legally bring that matter to our attention in this proceeding. The heirs of the deceased party are not complaining, and the only persons liable to be disadvantaged are the appellees.

In any aspect of the case as developed at the trial the will of John Loughran was not competent evidence. He was the husband of the testator and died a long time before his wife and nothing in his will tended to show that undue influence was brought to bear on his widow when she made her will. Its admission would have diverted the attention of the jury from the question they were charged to consider and would have led them into an examination of the condition of the estate of John Loughran and an inquiry whether Mrs. Loughran had executed the power committed to her by her husband's will. These mat-

ters were in no way connected with the execution of Mrs. Loughran's will and could not have aided the jury in determining the question before it. If we assume that Mrs. Loughran disregarded the directions contained in the power in the will, that does not at all support the allegation that some controlling influence directed her and this is practically admitted by the learned counsel for the appellant who, while conceding that the evidence was not necessarily indicative of that which he sought to establish, yet thought that it was proper for the consideration of the jury in weighing the whole evidence. Unless, however, it tended to support the issue it was not admissible. But it is said that the most serious practical result of this ruling was that several parties to the issue were thereby disqualified. We do not find anything in the record, however, which shows such a consequence. The jury was sworn as to all the parties named in the register's precept; no action was taken excluding any one of them; the appellees made no objection to the presence of any of the defendants on the record, nor do we find that the rejection of the will resulted in the exclusion of any testimony offered by the contestants. There is no ground, therefore, for the conclusion that the jury supposed that any of the contestants had lost their standing. The only thing to be considered in the case tried was whether the document presented for probate was the lawful will of the testator. It did not involve the question as to the proper exercise of the power conferred by the will of John Loughran.

The allegation of the contestants was that Catherine Grogan, a cousin, and Rev. P. J. Flaherty, a spiritual adviser of the testator, had exerted the influence of which the appellees complain. In support of this charge it was proposed to show that the testator conveyed to Catherine Grogan a house and lot in the city of Philadelphia. When this was done with reference to the date of the will does not appear, nor is there any fact or circumstance connected with the transaction offered or suggested which tended to impeach the fairness of the conveyance or to show that it was not a free and voluntary act on the part of the grantor. The court would not have been justified in saying that that was evidence of undue influence, nor would the

jury have been warranted in reaching such a conclusion. Along the same line it was proposed to prove that Mrs. Loughran had withdrawn, at one time, $1,200, and at another time, $5,000, from a savings bank in which she made deposits, and that Catherine Grogan was with her. There was not any offer to show that this was done at the instigation of Miss Grogan or that she received any of the money, and the counsel for the appellants frankly admitted that they were not able to prove what Mrs. Loughran did with the money so taken from the bank. To submit a case on such evidence as this would invite the jury into the realm of the widest imagination and let speculation take the place of proof. The evidence must have a logical tendency to exclude the presumption of the absence of undue influence.

It is not easy to see what pertinent argument the learned counsel proposed to make from the evidence offered to show that the "ecclesiastical faculties" of Rev. P. J. Flaherty had been withdrawn by the church to which he belonged on charges preferred against him, and that he had been "subject to frequent and repeated censures for misconduct in connection with thrusting yourself into the affairs of people and inducing them to make and alter wills," and that he was in default for a large amount as an executor of two estates. Keeping in mind that the charge was that he exerted undue influence over the testator it is obvious that this course of examination did not tend to support the issue but would have led into an inquiry on subjects not even remotely connected with the case before the court.

The tenth assignment presents a portion of the charge of the court. The part particularly objected to is that in which the court said to the jury that before they could say that any undue influence was exercised by Catherine Grogan they must be able to say that at the time of making the will Mrs. Loughran was "insanely influenced" by her to make a will which she otherwise would not have made. This was probably suggested by the fourth, fifth and sixth points presented by the counsel for the appellant in which the court was requested to charge as to the effect of insane delusions existing in the mind of the testator

under the influence of which she made her will. It was an instruction quite apposite in connection with the last of the points above referred to. Whether the words are susceptible of the construction put on them by the appellants it is not necessary to consider, for the attention of the court was immediately called to the language used and the court at once renewed the instructions omitting the words objected to and stating the law correctly and in substantial accordance with the position taken by the appellants' counsel at the trial. Taking the charge as a whole the case was carefully and clearly presented to the jury and the law applicable to the case correctly stated.

We are not persuaded that any of the assignments should be sustained.

The judgment is affirmed.