Commonwealth *v.* Cauffiel, Appellant.

Argued September 30, 1929.

Before PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Percy Allen Rose,* for appellant.

*D. P. Weimer,* for appellee.

OPINION BY GAWTHROP, J., November 22, 1929:

On January 14, 1929, this appellant was charged, in a single information before C. J. Rowland, a justice of the peace in and for the Borough of Ebensburg, Cambria County, (1) with having, as the duly, qualified and acting mayor in and for the City of Johnstown, unlawfully, wilfully and fraudulently received and taken, by color of his office, from one Jonathan Rager, certain fees and rewards between February 20, 1928, and July 16, 1928, inclusive, amounting to $15,636, the same not being allowed by any act of assembly of this Commonwealth; (2) with having been elected to the office of mayor of said city on November 8, 1927, and having received from the said Rager, between October 20, 1927, and November 8, 1927, the sum of $10,600 as a contribution toward his election expenses, and with having failed and refused to file with the clerk of the court of quarter sessions of Cambria County an account pertaining to said sum of $10,600, or any part thereof; (3) with having, unlawfully and falsely, violated the oath prescribed by Section 1 of Article VII of the Constitution of this Commonwealth, which he took on January 2, 1928, as required by the Act of April 18, 1874, P. L. 64. On the same day appellant and Rager were charged in an information before the same justice of the peace with having unlawfully conspired "to do certain malicious, dishonest and unlawful acts." On February 26, 1929, appellant and Rager were charged in another information before the same justice of the peace with having conspired to set up and maintain gambling houses, and with setting up and maintaining gambling houses in the City of Johnstown; and appellant, as mayor of said city, was charged with taking and receiving from Rager between the dates of February 20, 1928, and July 16, 1928, inclusive, $15,636, for the permission to Rager to maintain said gambling houses. Seven indictments, based on

these informations, were found by the grand jury. The first indictment charged appellant with the offense of misdemeanor in office; the second charged him with extortion and contained eleven counts; the third charged him with perjury consisting of wilful and corrupt false swearing in the oath of office which he took on January 2, 1928; the fourth charged him with violation of the election laws in failing to include in his expense account filed all contributions which he had received from others; the fifth indictment charged appellant and Rager with conspiracy to conduct and maintain gambling houses in the City of Johnstown; the sixth and seventh indictments charged appellant and Rager with keeping and maintaining gambling houses as aforesaid. Appellant was convicted in the court of quarter sessions of Cambria County on all of the bills, except that which charged him with filing a false account of his election expenses. On the latter bill he was acquitted. On the bill charging misdemeanor in office, the sentence was to pay the cost of prosecution and a fine of $500 and to serve in the county jail for one year and "that you shall be and are hereby removed from the office of mayor of the City of Johnstown." On the bill charging conspiracy the sentence was to pay the costs and a fine of $500 and to serve in the county jail for two years (to be released on parole at the end of one year) to commence at the expiration of the sentence imposed on the first bill. On the other bills he was directed to pay the costs of prosecution and sentence was suspended. Whereupon these six appeals were taken. The orders of the court directing the defendant to pay the costs of prosecution and suspending sentence were not sentences within the meaning of the law: Com. v. Hamel, 44 Pa. Superior Ct. 464; Com. v. Dunleavy, 16 Pa. Superior Ct. 380. The liability of a defendant for costs is not a part of the penalty imposed by the statutes which provide for the punish-

ment of these offenses. Such liability is an incident of the judgment, arising out of our statutes providing for the payment of costs in criminal proceedings: PORTER, J., in Com. v. Hamel, supra. Until there is a sentence upon a bill no appeal lies. It follows that the only . appeals which are properly before us are Nos. 22 and 25, April T., 1930, from the sentences imposed at Nos. 147 and 151, March Sessions, 1929, in the court below. The other four appeals are quashed.

At the trial Rager pleaded guilty upon the indictments against him and testified for the Commonwealth against appellant.

As a result of the evidence before them, the jury could have found these facts and circumstances: At the primary election in the fall of 1927, appellant was a candidate for nomination for the office of mayor of the City of Johnstown on the Republican ticket, but was defeated. Thereafter he decided to run independently and desired to secure funds to cover the expense of his campaign. Through the agency of Charles Cauffield he got in touch with Rager who had been in the gambling business in and about Johnstown for many years and an agreement was entered into by them, whereby Rager promised to furnish sufficient money to appellant to cover the expenses of his campaign, in consideration of which appellant promised that if he were elected mayor he would protect Rager in the exclusive exercise of the privilege of maintaining and conducting a gambling house or gambling houses in that part of the City of Johnstown which is located above the "Stone Bridge." In addition to the moneys to be furnished for the campaign, Rager promised to pay appellant forty per cent. of the net income from the gambling business conducted by Rager. Rager furnished appellant $10,600 for the campaign and after he took office paid him forty per cent. of the net income of the gambling business until about July or August,

1928, when payments were discontinued because appellant failed to close the other gambling houses in the district in which Rager was to have the exclusive privilege to operate.

The first assignment of error complains of the overruling of an objection interposed by appellant to his trial on all of the bills of indictment before the same jury. Appellants in their brief concede that the rule of law is that the consolidation of the trial of one or more defendants under one or more bills of indictment arising out of the same transaction is a matter within the discretion of the trial judge, and that the appellate court will reverse only for an abuse of discretion. It has been held that the simultaneous trial on two indictments charging murder against the same defendant is warranted: Com. v. Valotta, 279 Pa. 84. See also Com. v. Brown, 264 Pa. 85. In Com. v. Danaleczk, 85 Pa. Superior Ct. 253, where five defendants were convicted before the same jury on indictments charging felonious rape upon two girls, the offenses being committed at the same time and place, we said: "The propriety of trying two indictments of this character before the same jury is a matter in which the trial court is invested with discretion and the ruling of that court will not be reversed unless it is made clearly to appear that the rights of the defendants have been thereby prejudiced." True the indictments in that case were founded upon an information which charged the offenses to have been committed by all of the defendants at the same time and place and no evidence was presented by the Commonwealth which would have been inadmissible at a separate trial on each of the indictments. Appellant contends that in the present case some of the evidence presented by the Commonwealth was competent and material under some of the bills and incompetent and immaterial under others. As an example he argues that the testimony of Rager that he

paid appellant the sum of $10,600 prior to the election and induction into office was neither competent nor material under the bill charging misdemeanor in office and the bill charging extortion. Even if it be conceded for present purposes that this contention is sound, we are not convinced that the rights of the defendant were prejudiced. While the transactions involving the payments by Rager to appellant prior to the election were somewhat remote in time from the transactions involving extortion and misdemeanor in office, as well as from the payments of the moneys from the profits of the gambling houses, all were part of one transaction which had its inception in the conspiracy to permit Rager to violate the criminal law after appellant became mayor and permit the latter to share the profits therefrom. During the trial no objection was made that any particular offer of evidence was not admissible in support of the averments of any particular indictment; nor was the court requested to instruct the jury that it should not be considered by them, in making up their verdict thereon. No assignment of error complains of the omission of the court to charge the jury as to the effect or relevancy of any of the evidence in that respect. Doubtless the trial judge would have given specific instructions in that regard if they had been asked. Assignment overruled.

The Commonwealth called as a witness one Charles Cauffield and relied largely upon his testimony to corroborate the accomplice, Rager. He was asked on cross-examination whether he had not been convicted of selling liquor illegally about the time of the primary election in 1927. He answered: ''Not sale; for possession.'' Then followed this: ''Q. Where were you convicted of that offense? A. I pled guilty right here. Q. In this court? A. In this court.'' The Court: ''If it is a plea, it is not material.'' The Court: ''Did you plead guilty?'' A. ''Yes, sir.'' The

Court: "Strike out the testimony." Mr. Rose: "Will your Honor indicate the testimony covered by your Honor's ruling?" The Court: "The questions and answers in relation to the conviction of the witness for the violation of the liquor laws, it appearing now from his statement that upon prosecution he entered a plea. Under such circumstances the plea is not evidence to affect his credibility and the testimony as to his conviction, unless the record shows it was a conviction instead of a plea, is ordered stricken out as to the conviction." Mr. Weimer: "It was a plea, Your Honor." Mr. Rose: "Q. Is it not a fact that pursuant to the plea of guilt in this court for the unlawful possession of liquor, that a sentence was imposed by the court?" Mr. Weimer: "It is objected to as irrelevant and immaterial and not cross-examination." The Court: "The objection is sustained and an exception noted to defendant." The sustaining of the district attorney's objection to this question is the subject of the second assignment of error. When the Commonwealth offered Cauffield as a witness his credibility became a subject for the consideration of the jury. The credibility of a witness may be attacked by interrogating him as to his conviction of such an offense as affects his credibility: Marshall v. Carr, 271 Pa. 271. The only crimes admissible to attack veracity are such as affect credibility and refer to the conviction of a felony, or a misdemeanor in the nature of crimen falsi: Com. v. Quaranta, 295 Pa. 264, 273, and cases there cited. When the law speaks of conviction it means a judgment and not merely a verdict which in common parlance is called a conviction: TILGHMAN, C. J., in Smith v. Com., 14 S. & R. 69. A verdict of a jury without more is but the expression of the collective opinion of twelve men which concludes nothing and supports nothing, except as it is followed by a judgment; and then it is the judgment and not the verdict

that marks the conclusion of the issue and gives it efficiency: Com. v. Minnich, 250 Pa. 363. A plea of guilty has no more efficiency and might have been withdrawn the next day: Buck v. Com., 107 Pa. 486. If judgment was entered on the plea it was competent evidence of the conviction. This information could be elicited either by cross-examination or by the offer of the record of the conviction: Com. v. Millman, 88 Pa. Superior Ct. 142. If the sentence as to which the witness was interrogated was for a crime which affected his credibility, the question whether the sentence was imposed would have been a proper one and its exclusion would have been error. But we are not prepared to hold that the illegal possession of intoxicating liquor is such a crime. Mr. Justice KEPHART said in Com. v. Quaranta, supra, that "in determining what are relevant crimes to affect credibility the question is ordinarily for the trial judge." In Com. v. Millman, supra, we held that it was not error to permit the Commonwealth to offer the record of the conviction of defendant's witness of the unlawful sale to the defendant of the same whisky which the latter was charged with possessing and transporting. There the record related to a crime growing out of the same transaction. We do not regard the decision as supporting the contention of counsel for appellant that in all circumstances the conviction of a witness of the illegal possession of intoxicating liquor may be offered to affect his credibility. Our conclusion is that the ruling complained of did not amount to error harmful to appellant.

When the witness, Charles Cauffield, was under cross-examination he was asked whether or not he said to one Edna Wirick that he was going to get rid of Mayor Cauffiel, that he was going to "frame him." He answered that he made no such statements to her at any time; that he "wouldn't stand and talk to her. I wouldn't tell her anything." Counsel for appellant

then proposed to ask the witness whether or not he paid Edna Wirick the sum of $15 for the purpose of inducing her to make an information against one Clifford Edwards on a charge of surety of the peace. The sustaining of the objection to this question is the ground upon which the third assignment of error is based. The ruling was right. The judge had given counsel for appellant wide latitude in asking questions tending to show the bias ill-will and interest of the witness. The question disallowed related to an entirely collateral matter, not even reflecting the attitude of the witness toward appellant.

The fourth assignment is to the admission of Commonwealth's Exhibit No. 9, which was an anonymous publication called the "Spring Handicap," distributed in Johnstown shortly after appellant took office in January, 1928, and containing numerous references and charges relating to the conspiracy and misconduct about which Rager testified. It charged appellant with receiving from Rager moneys for his election, and that appellant was permitting Rager to run a gambling house unmolested. Appellant testified that on February 2, 1928, he called Rager on the telephone and asked him to come to his office, and that when Rager arrived he handed to him a copy of the publication and asked him to read it. Rager, when on the witness stand, identified the exhibit as a copy of the same "Spring Handicap" which the mayor handed to him with a request that he read it and tell him what he knew about it. The evidence was competent, relevant and material. It was as much a part of the transaction at the mayor's office on that day, as the other incidents which occurred between the mayor and Rager, and tended to give the jury more intelligent understanding of the interview between them. We agree with the trial judge that the case of the Commonwealth would

have been short of a very material matter if this exhibit had not been introduced.

The fifth assignment is to the sustaining of the objection of the Commonwealth to defendant's offer to prove by his witness, Clifford Edwards, that the Commonwealth's witness, Charles Cauffield, had told him the names of the persons who were associated with him [Cauffield] in his efforts falsely to accuse the mayor, to impeach him and name his successor in office, in whom he would have protection in the matter of a tippling house. After the objection to this offer was sustained on the ground that no such question had been addressed to the witness, Charles Cauffield, while on the stand, it was renewed for the further purpose "of showing the connection between Jonathan Rager and Charles Cauffield, and for the further purpose of contradicting Jonathan Rager, who testified that he had no connection with Charles Cauffield; and for the further purpose of contradicting Charles Cauffield, who also testified that he had no connection with Jonathan Rager in his effort to impeach the mayor." The objection to this offer was sustained. The assignment violates Rule 22 of this court, because it refers to more than one bill of exceptions. For this reason we might disregard it. We have, however, examined the testimony and find that the learned trial judge was right when he stated, in effect, that counsel for the defendant had not laid proper ground for the question proposed, because he had not asked Charles Cauffield, on cross-examination, whether he told Clifford Edwards that certain persons, naming them, were associated with him in falsely accusing the mayor.

During the examination of this same witness, Charles Cauffield, he was asked whether he did not state to Edna Wirick that he proposed to get rid of Mayor Cauffiel, that he was going to "frame him," etc. He answered that he had not talked to Edna Wirick since

the prosecution and made no such statements to her at any time. When Edna Wirick was on the stand appellant offered to prove by her that Charles Cauffield paid her the sum of $15 to induce her to prosecute Clifford Edwards before an alderman on a charge of surety of the peace. The offer was made "for the purpose of contradicting Charles Cauffield by showing his interest in the intimidation of witnesses for the defense." The transaction mentioned in the offer was made March 4, 1929, the day of the meeting of the grand jury which passed on the bills of indictment in this case. It is sufficient to say that the evidence offered was not in contradiction of anything testified by Charles Cauffield, nor are we satisfied that the evidence tended to show Charles Cauffield's bias against appellant. The assignment is without merit.

The seventh and eighth assignments bring before us two rulings of the trial judge that appellant could be asked by the Commonwealth on cross-examination whether he remembered about trying to get some money out of Franke and Conway, and whether Franke and Conway were paying anything to him for the privilege of conducting their establishment. The contention made for appellant is that both of these rulings were in violation of the Act of March 15, 1911, P. L. 20, providing: "That hereafter any person charged with any crime and called as a witness in his own behalf shall not be asked, and if asked, shall not be required to answer, any question tending to show that he has committed, or has been charged with, or been convicted of, any offense other than the one wherewith he shall then be charged, or tending to establish that he has been of bad character or reputation; unless,—One, He shall have at such trial, personally or by his advocate, asked questions of the witness for the prosecution with a view to establish his own good reputation or character, or has given evidence to prove his own

good character or reputation; or, Two. He shall have testified at such trial against a co-defendant, charged with the same offense.'' The district attorney urges that even if the cross-examination was improper under the circumstances, counsel for appellant should have asked for the withdrawal of a juror and the continuance of the case if he felt that his client had been prejudiced to such an extent as to affect the fairness of the trial. Com. v. Diagicobbe, 85 Pa. Superior Ct. 305, is cited as so deciding. But it does not. In that case the trial judge sustained the objection and ordered the question and answer (in the negative) to be stricken out. We held that this was all that the court was required to do on its own motion, and the defendant could not take his chances of a verdict and if that was adverse, then seek a reversal because the court did not do what it was not asked to do. But here the court overruled the objection; did what he was asked not to do. The ruling was excepted to and is reviewable on appeal.

Were the questions objectionable? Undoubtedly they were, unless the circumstances in which they were asked either brought them within the exceptions mentioned in the act, or unless they were the natural development of the facts disclosed by his testimony preceding the questions, rather than an attempt to introduce evidence of the commission by defendant of another offense. After a careful reading of the evidence preceding the questions objected to, we have been unable to conclude that either the questions asked of any witnesses for the prosecution on cross-examination, or any evidence which had been offered in his behalf, tended to prove his good reputation or character. But we are not convinced that the questions were outside the bounds of proper cross-examination in which considerable latitude is permissible. Appellant had asserted that he had endeavored to close all the gambling

houses in the city, including Rager's and had closed nearly all of them. He referred to particular places which his police force had tried to close, but failed to do so. He testified that "we got into Bill Franke's place. We took the door off the hinges to get in." Apparently the "Bill Franke" mentioned is the Franke of Franke and Conway. For the purpose of casting doubt upon the truth of his statement that he had made an honest effort to close the gambling houses in the city and to contradict his testimony, the district attorney asked him whether he remembered trying to get some money out of Franke and Conway, and whether Franke and Conway were paying him for the privilege of conducting their place. Manifestly these questions were but preliminary to these two which followed: Did you have a conversation with Jonathan Rager about Franke and Conway? and, Do you deny that during the month of January you asked Jonathan Rager to demand from Franke and Conway the sum of $500 a month for the privilege of running their place of business? We think that appellant's testimony of his persistent efforts to close the gambling houses of the city opened the door for his interrogation along the line which the cross-examination took. In the words of Mr. Justice FRAZER, in Com. v. Cicere, 282 Pa. 492, the testimony preceding the questions complained of shows them to have been "the result of the natural development of the facts, rather than an attempt to introduce evidence of the commission by the defendant of another offense." The fact that the questions referred to another crime, in which appellant was engaged, did not, in the circumstances, amount to a violation of the Act of 1911. See Com. v. Dorst, 285 Pa. 232, and Com. v. Diagicobbe, supra.

The ninth assignment relates to one of the appeals which has been quashed.

The only other assignments covered by appellant's

statement of the questions involved are grounded upon alleged errors in the charge, the specific complaints being that it emphasized unduly the testimony of the Commonwealth and minimized that of defendant, and that the portions relating to corroboration of the testimony of an accomplice and the doctrine of reasonable doubt were wrong. We are unable to agree that this criticism is warranted and deem discussion unnecessary.

All of the assignments of error in appeals Nos. 22 and 25, April T., 1930, are overruled and the judgments are affirmed, and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentences, or any part of them, which had not been performed at the time the appeals in these cases were made a supersedeas.

Appeals Nos. 23, 24, 26 and 27 are quashed.