## Commonwealth *v.* Festa, Appellant.

Argued October 23, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*William A. Gray,* with him *Vincent P. Desmond,* for appellant.

*R. Paul Lessy,* Assistant District Attorney, with him *C. William Kraft, Jr.,* District Attorney, for appellee.

OPINION BY JAMES, J., December 14, 1944:

These appeals are from sentences imposed after conviction on two separate indictments, Nos. 284 and 285. The seven assignments of error are practically identical on both appeals, were argued together and will be disposed of in one opinion.

Appellant, Dominick Festa, was charged in indictment No. 285 with carrying a concealed deadly weapon in violation of the Penal Code of 1939, P. L. 872 §416; 18 P. S. Supp. §4416. Indictment No. 284 contained two counts, but he was tried only on the first, for carrying a firearm in a vehicle without a license, contrary to the Penal Code of 1939, P. L. 872, §628; 18 P. S. Supp. §4628. Despite appellant's objections, the two indictments were tried together, and the jury returned on each a verdict of guilty. On bill No. 284, the appellant was sentenced to pay a fine and costs, and imprisonment in the county jail for a period of 1½ years minimum to three years maximum. The sentence on No. 285 was a fine, costs, and imprisonment in the county jail for a period of 6 months minimum to one year maximum, to be concurrent with the sentence on No. 285.

Only the Commonwealth offered any evidence, largely unquestioned. Appellant was arrested during a raid on a gambling establishment in the City of Chester and immediately searched. In one of his pockets there was a large closed knife, of a type used to cut linoleum. Other articles in his possession included an "A" and "B"

Gasoline Ration Book for a 1941 Cadillac Sedan, issued to Dominick Festa, an owner's card for a 1941 Cadillac Sedan, license number 9 EV 67, and a set of automobile keys which had attached a small license tag with Pennsylvania registration 9 EV 67. Two State troopers took the keys, went around the corner where the Cadillac Sedan was parked, used the keys to open the front door of the car, within which they found, in the glove compartment on the dash, a .38 caliber snub-nose Colt revolver, less than 12 inches in length and with a 1½ inch barrel, loaded with six shells. Testimony was introduced that appellant had admitted driving the sedan to the gambling house that night and that the revolver had been kept in the car for the past three months while it was being driven by appellant. Admittedly appellant worked as a salesman for a Chester brewery.

The first assignment of error complains of the consolidation of the two indictments for trial. The propriety of trying two indictments together before the same jury is within the discretion of the trial judge, who will not be reversed unless the defendant was clearly prejudiced thereby. *Com. v. Danaleczk*, 85 Pa. Superior Ct. 253; *Com. v. Beattie*, 93 Pa. Superior Ct. 404; *Com. v. Crandall*, 145 Pa. Superior Ct. 353, 21 A. (2d) 232. That some of the evidence was competent and relevant under one bill and not the other does not necessarily show prejudice. *Com. v. Cauffiel*, 97 Pa. Superior Ct. 202; *Com. v. Reilly*, 125 Pa. Superior Ct. 340, 189 A. 768. The testimony was brief, simple, uncontradicted, and easily digested by a jury. Much of it referred to the circumstances which led to the finding of the knife and the revolver, these being material to both indictments. Both offenses are misdemeanors. *Com. v. Reilly*, supra, at p. 344; *Com. v. Wheeler*, 75 Pa. Superior Ct. 84, 88. The presence of the "same transaction" as the groundwork for the charges tried together, though continuously mentioned by the courts, is not

the controlling feature, but it serves as a factor, an important factor perhaps, but not a necessary one, in determining whether the lower court abused its discretion. "Whether the rights of a defendant will be prejudiced by trial before the same jury is the determining consideration." *Com. v. Tracey,* 137 Pa. Superior Ct. 221, 228, 8 A. (2d) 622. At worst, appellant was only put to a tactical disadvantage. *Com. v. Antico,* 146 Pa. Superior Ct. 293, 311, 22 A. (2d) 204.

Another contention is that the evidence adduced—the presence of a "linoleum knife, a type they cut linoleum with" in one of the pockets of Dominick Festa at the moment when the premises were raided—was insufficient to permit any inference that the instrument was a deadly weapon carried with an intent to do injury to any other person. Bill No. 284 is based on §416 of the Act of June 24, 1939, P. L. 872, 18 P. S. Supp. §4416, which states: "Whoever carries any firearm, slungshot, handy-billy, dirk-knife, razor or any other deadly weapon, concealed upon his person, with the intent therewith unlawfully and maliciously to do injury to any other person, is guilty of a misdemeanor ......" Similar statutes exist in many other states, except that some fail to mention a razor specifically or speak of a "deadly weapon" of like kind or description. *Brewer v. State,* 21 So. 355 (Ala.) ; *Brown v. State,* 62 So. 353 (Mississippi) ; *Barboursville ex rel., Bates v. Taylor,* 174 S. E. 485 (West Va.) ; *People v. Mulherin,* 35 P. (2d) 174 (Calif.) ; *Schwarz v. Poehlmann,* 178 Ill. App. 235 (Ill.), and ordinarily possession alone constitutes the offense, regardless of the intent of the carrier. The decisions in these jurisdictions usually prescribe "such instruments as are dangerous per se—inherently, intrinsically, characteristically. There are two classes: (1) Articles intended as weapons, such as revolvers, billies, dirks, and metallic knuckles; and (2) articles the primary use of which is not as

weapons, but which are readily adaptable to that use ......" *Barboursville ex rel., Bates v. Taylor,* supra; at p. 487. "The law maker ...... only denounced as a crime the carrying concealed dangerous weapons eo nomine, and not such articles, or instruments as might be used in an assault." *State v. Nelson,* 38 La. Ann. 942, 945. Whether an instrument or article is a dangerous weapon, is, under this view, usually a question of law to be decided by the court.

Our statute differs materially. The carrying of a concealed weapon must be with an intent to do therewith unlawful injury to some person. The law does not forbid the innocent carrying of any object, whether used solely for attack or defense, like a firearm, or possessing some legitimate function beyond a utility to wound or maim, like a razor. What is prevented is the concealed carrying of any article which is intended to be used unlawfully against some person, whenever that article might serve as a dangerous and deadly weapon, that is, whenever it is capable of inflicting death or great bodily harm. 13 Cyc. 257, 283. "It is plainly its general purpose to prohibit and prevent the carrying of deadly weapons concealed about the person for purposes offensive and defensive, and thus protect individuals against sudden, unexpected, dangerous and perhaps deadly violence inflicted with weapons, that the assailing party has concealed in some way on, about, or conveniently near to his person ...... A man could use a great variety of instruments employed ordinarily for useful, practical purpose, as deadly weapons of a very fatal type; as for example, a butcher's knife, a shoe knife, a carving knife, a hammer, a hatchet, and the like." *State v. Erwin,* 91 N. C. 545, 547. Certainly a razor, specifically named in the statute as a dangerous weapon, serves as important a function as a linoleum knife and is frequently carried inside a pocket, but whenever the intent to use a razor to harm someone is pres-

ent, carrying it becomes a misdemeanor. Similarly a linoleum knife, though potentially capable of inflicting death or serious injury, may be carried about until the moment when an intent to use it to do injury to any person creeps into the mind. It is true that the statute declares that "The jury trying the case may infer such intent from the fact that defendant carried such a weapon." This only means that while the Commonwealth bears the burden of convincing the jury beyond a reasonable doubt of an intent to do injury with the concealed weapon, once evidence is introduced that the weapon was concealed, and that it was, under the circumstances, dangerous and deadly, then the case must go to the jury, and the verdict of the jury will not be disturbed. *Com. v. Bruno,* 82 Pa. Superior Ct. 388. It still leaves the question what is a deadly weapon dependent "not so much on the article itself, provided it is one that may become dangerous to life, as upon surrounding circumstances, and the intent with which it is carried ......" *State v. Larkin,* 24 Mo. App. 410, 411. See *People v. Gogak,* 171 N. W. 428.

Whether the appellant was guilty of carrying a concealed deadly weapon with the intent to use it unlawfully and maliciously against some person was a question of fact determinable by the jury. The knife was admitted as an exhibit, so that the members of the jury were able to see it, but our knowledge is limited to the record, which is barren of any description beyond a designation of it as a "linoleum knife." Its size, curvature and sharpness, were factors in any judgment on its deadliness. No explanation whatsoever was given why a brewery salesman should carry such a knife in his pocket while visiting a gambling establishment. The further discovery of a loaded revolver in his automobile might increase the suspicion. There was ample evidence to necessitate a decision by a jury.

The other exceptions concentrate on the charge. Re-

ferring to indictment No. 285, the court said: "The Act of Assembly ...... refers to a revolver and a dirk-knife, and you will have to determine whether it is a deadly weapon, and whether it is being carried for the purpose or intent to do bodily harm to some one. The fact that you find it in the possession of the defendant would not mean anything. If he were a Congoleum worker or mechanic, and a knife would be necessary in his trade no one would think that such a person should be found guilty ...... If you come to the conclusion that this is a deadly instrument or weapon you may, from all the circumstances of the case come to the conclusion, if the factual situation warrants it, that any person having such in their possession the intent will be *presumed* (italics ours) that some harm was intended to be done to some person ...... But you must find that it was in his possession and it was there with the intent to do bodily harm or to injure a human being ......" The complaint is that the term "presumed" erroneously advised the jury that the burden of disproving intent shifted to the appellant. We doubt whether the jury was misled by the interpolation of the one word into an otherwise correct charge. At any rate, the mistake was repeatedly called to the attention of the court by defendant's counsel and it was fully corrected, until the jury could not help but understand the law. When counsel objects to certain words used by the trial judge in his charge and the instructions are restated correctly, the use of such words, even though erroneous, is not ground for reversal. *Trainer v. McGarrity,* 40 Pa. Superior Ct. 57.

Further objection is made to this portion of the charge: "I say to you that if he had it in the glove compartment, a loaded revolver, *and for which he can make no explanation as to the charge made against him in the indictment, that he had a right to have it there,* (italics ours) ...... that he was obliged to have a

license issued therefor ...... if the gentleman who represents the defendant has exceptions he wants to raise ...... let him raise the same, but I have not any knowledge of their being raised. The only exception he could raise would be as to a messenger or an agent for a bank, American Railway Express, and so forth! Taking money from place to place, but is that this case?" The italicized portion is argued as being a violation of the Act of May 23, 1887, P. L. 158, §10, 19 P. S. §631 that "...... nor may the neglect or refusal of any defendant, actually upon trial in a criminal court, to offer himself as a witness ...... be adversely referred to by court or counsel during the trial." The charge, however, as any fair reading will reveal, does not refer to the absence of the defendant to take the witness stand, but to the failure of the defense to attempt proof that the appellant was within the categories excepted by the Uniform Firearms Act from the prohibition of carrying a firearm in a vehicle without a license. The remark is similar to the statement "If you find that James Rizzo had these stolen goods in his possession then it is his duty to explain to you how he came into possession of them," approved in *Com. v. Rizzo,* 78 Pa. Superior Ct. 163, 166. Appellant might have shown a right to carry the firearm by witnesses other than himself. *Com. v. Carr,* 137 Pa. Superior Ct. 546, 563, 10 A. (2d) 133.

On turning to the bill No. 284, dealing with carrying a firearm in a vehicle without a license, the jury was instructed that if an unlicensed revolver was found in appellant's sedan, he would be guilty, even though he had never moved the car with the firearm inside from one place to another. "Carry" has been defined as "To have or bear upon or about one's person, as a watch or weapon;—locomotion not being essential. State v. Nieto. 101 Ohio St. 409, 130 N. E. 663, 665, Danal v. State, 14 Ala. App. 97, 71 So. 976." Black's Law Dictionary, 3rd ed. p. 283. In a prosecution for carrying concealed weap-

ons, accused may be guilty although from the time he placed the pistol in his pocket until it was taken by the arresting officer he had not walked even as much as a step, but had been standing still; the word "carry" being used in the sense of a connection between the weapon and the carrier so "that the locomotion of the body would carry with it the weapon as concealed." *Thomas v. State,* 64 So. 192, 193, 9 Ala. App. 67. The Commonwealth need not prove more than the presence of the firearm in the car while accused was inside.

The trial judge perhaps did not explain as clearly and as directly as he should have that the mere presence of a revolver in the appellant's car was not a crime unless the appellant was present and in control of the movements of the car. Nevertheless, the general tenor of the instructions must have left the right impression with the jury. The charge must always be read as delivered as a whole. *Com. v. Palmer,* 148 Pa. Superior Ct. 127, 24 A. (2d) 640; *Com. v. Dock,* 146 Pa. Superior Ct. 16, 21 A. (2d) 429.

Judgments affirmed and the said Dominick Festa is directed to appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentences or any part of them that had not been performed at the time the appeals were made a supersedeas.