## Commonwealth v. Billett

660

*Henry J. Rutherford,* for defendant.

*Wilson Bucher,* assistant district attorney, contra.

JOHNSTONE, J., April 7, 1961:— Defendant was indicted, tried before a jury and convicted of carrying a concealed deadly weapon. Motions in arrest of judgment and for a new trial were filed by defendant and argued before the court en banc. While defendant did not abandon his motion for a new trial, his only contention is that the evidence is not sufficient to support a charge of carrying a concealed deadly weapon.

In passing upon defendant's motions, we must accept as true the testimony submitted by the Commonwealth as well as the reasonable inferences which can properly be drawn therefrom: Commonwealth v. Jackson, 187 Pa. Superior Ct. 2. The sufficiency of the evidence, together with its reasonable inferences, must be tested according to the Commonwealth's evidence: Commonwealth v. Gates, 392 Pa. 557, 559. Even if the jury believed the Commonwealth's testimony but it was too fantastic for credence, or did not sustain the conviction, the judgment must be arrested: Commonwealth v. Brown, 184 Pa. Superior Ct. 494.

There is no real dispute concerning the facts in this case. The only question is, are the proven facts sufficient to sustain the conviction? The record discloses that on August 20, 1960, at about 10 p.m., a constable went to defendant's home armed with a warrant for his arrest on a charge of disorderly conduct. The constable was admitted to the home by defendant's wife, and he found defendant sleeping. The constable wakened de-

fendant and took him to the office of the justice of the peace, where he was committed to the Lancaster County Prison. Defendant was transported to the prison in handcuffs and turned over to the guards at the prison. Then he was searched and a set of aluminum knucklers was found in his hip pocket behind his handkerchief.

There was testimony, which the jury apparently believed, that the knucklers taken from defendant's pocket are a deadly weapon. The constable frisked defendant before taking him to jail but did not feel the knucklers because they were behind his handkerchief. An attempt to escape was made by defendant as the constable was putting him in the car to take him to jail, but there was no trouble after defendant was handcuffed, and defendant made no threats of any kind. There was evidence that defendant had been drinking, but apparently the jury did not believe that he was so drunk he could not form an intention to do something or that he did not know what he was doing.

Defendant, a molder, testified that he did not intend to use the knucklers as a weapon of violence but did intend to use them as a pattern to make a door knocker. Since defendant had obtained the knucklers in 1955 or 1956, it is apparent the jury did not believe his explanation but concluded that defendant intended to do injury to some other person.

The Penal Code of June 24, 1939, P. L. 872, as amended, provides, 18 PS §4416: "Whoever carries any firearm, slungshot, handy-billy, dirk-knife, razor or any other deadly weapon, concealed upon his person, or any knife, razor or cutting instrument, the blade of which can be exposed in an automatic way by switch, push-button, spring mechanism, or otherwise, with the intent therewith unlawfully and maliciously to do injury to any other person, is guilty of a misdemeanor. . . ."

It is further provided that the jury may infer an intent to do injury to another person from the fact defendant carried such a weapon.

In Commonwealth v. Festa, 156 Pa. Superior Ct. 329, the court stated at page 334:

"The carrying of a concealed weapon must be with an intent to do therewith unlawful injury to some person. The law does not forbid the innocent carrying of an object, whether used solely for attack or defense, like a firearm, or possessing some legitimate function beyond a utility to wound or maim, like a razor. What is prevented is the concealed carrying of any article which is intended to be used unlawfully against some person, whenever that article might serve as a dangerous and deadly weapon, that is, whenever it is capable of inflicting death or great bodily harm."

No complaint is made here by defendant of any error in the conduct of the trial or in the adequacy or accuracy of the court's charge. On the basis of the jury's verdict, there is no question that defendant was carrying a deadly weapon; that he had it concealed on his person; and that he intended to inflict injury on some other person. It is defendant's contention that since he was in his own home sleeping when he was arrested and since he did not leave his home willingly but was in the custody of the law the whole time until the weapon was found on his person at the prison, he could not be guilty of carrying a concealed deadly weapon for he could form no intention of using it on anyone.

In our opinion, the fact that defendant was in his home when arrested and in the custody of the law thereafter until the deadly weapon was ultimately found does not relieve defendant of responsibility for his carrying a concealed deadly weapon with intent to injure someone. Defendant offered as his reason for

carrying the knucklers his intention of using them as a pattern for a doorknocker. The jury did not believe his testimony. Defendant did not say that he had the deadly weapon to defend himself and his home, nor did he say that he only carried the knucklers while in his home. The only explanation offered by defendant was rejected by the jury, which decided from all the evidence that defendant, even though in his own home, and even though he had no opportunity to inflict injury on anyone, intended to do injury to some other person. We can only conclude that the jury was justified in bringing in a verdict of guilty and that the evidence was sufficient to sustain the verdict.

And now, April 7, 1961, the motions for a new trial and in arrest of judgment are dismissed and defendant is directed to appear for sentence at the call of the district attorney.