J-S40028-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
       :        PENNSYLVANIA
         Appellee   :
       :
           v.   :
       :
FRANK AIELLO   :
       :
         Appellant   :      No. 3694 EDA 2016

Appeal from the Judgment of Sentence July 18, 2016
in the Court of Common Pleas of Philadelphia County
Criminal Division at Nos.: CP-51-CR-0001922-2015
CP-51-CR-0001923-2015

BEFORE:   LAZARUS, J., DUBOW, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:          **FILED OCTOBER 25, 2018**

Appellant, Frank Aiello, appeals from the aggregate judgment of sentence of eight to twenty years of confinement following his bench trial convictions for criminal attempt to commit murder, aggravated assault, possessing instruments of crime ("PIC"), terroristic threats with intent to terrorize another, and recklessly endangering another person ("REAP")[1] at Docket No. CP-51-CR-0001922-2015 and PIC, terroristic threats with intent to terrorize another, REAP, and aggravated assault[2] at Docket No. CP-51-CR-0001923-2015. We affirm.

---

[1] 18 Pa.C.S. §§ 901(a), 2702(a), 907(a), 2706(a)(1), and 2705, respectively.

[2] 18 Pa.C.S. §§ 907(a), 2706(a)(1), 2705, and 2702(a)(1), respectively.

---

\*   Retired Senior Judge assigned to the Superior Court.

In its opinion, the trial court fully and correctly set forth the relevant facts of this case:

On November 29, 2014, Ms. Cheryl Mollo invited Appellant over her house for Thanksgiving leftovers. Notes of Testimony (N.T.) 2/8/16 at 33. Appellant had recently been struggling because he had not seen his kids in a long time. *Id.* at 32. Ms. Mollo invited him over to see if he was doing alright. *Id.* at 33. After Ms. Mollo made Appellant a plate of leftovers, she asked Appellant to leave, but he refused. *Id.* at 12. During the argument that followed, Appellant said that he was going to kill himself and Ms. Mollo. *Id.* at 12-13. Appellant then began to hit Ms. Mollo with a closed fist to her head and body. *Id.* at 13-14. Ms. Mollo rushed to the bathroom and called the neighbors by cell phone to tell them to call the police. *Id.* at 14-15. As Ms. Mollo was in the bathroom, Appellant asked her if she was calling the cops and if she had her cell phone. *Id.* at 16. When Ms. Mollo came out of the bathroom, Appellant retrieved a butcher's knife from the kitchen. *Id.* at 16-17. Shortly after, there was a knock on the front door and Appellant told Ms. Mollo not to answer. *Id.* at 18. When Ms. Mollo went toward the door, Appellant put the knife up to her chest. *Id.* at 19. Appellant stabbed Ms. Mollo in the chest, leaving a penetrating wound just above her heart. *Id.* at 19. As a result, Ms. Mollo had a scar that is approximately 2 to 2 and a half inches long. *Id.* At this time, police entered the residence. *Id.* at 21.

Police Officer [Phillip] Cherry stated that he pulled up to the residence at 2605 South 9th Street behind Lieutenant Wong. N.T. 2/9/16 at 6. Officer Cherry exited his vehicle and approached Ms. Mollo's house. *Id.* As he approached, he could hear a lot of yelling, screaming and some banging. *Id.* He and Lieutenant Wong knocked on the front door several times trying to gain entry. *Id.* After the officers made entry into the home, they observed Ms. Mollo standing just to the left of the front door and Appellant standing on a landing area with a knife in his hand waving it back and forth with the blade facing outward. *Id.* at 6-7. Officer Cherry then pulled Ms. Mollo behind him, pulled his firearm and kept Appellant at gunpoint. *Id.* at 6. Officer Cherry gave Appellant several verbal commands to put the knife down but he did not comply. *Id.* at 8. Appellant then stated that if the officers took a step towards him that there are going to be problems and it will

not end well. *Id.* He also stated that if they took a step towards him that he would kill them. *Id.* at 9.

Officer Cherry then asked [a third police officer who had arrived at the scene,] Officer Edwards[,[3]] to deploy his taser to avoid any bloodshed. *Id.* at 8, 9. Officer Edwards deployed the taser and struck Appellant. *Id.* at 10. Appellant fell backwards but still clenched to the knife. *Id.* The officers then approached Appellant and as Officer Cherry got close to get the knife out of his hand, Appellant swung the knife downward toward Officer Cherry's right foot. *Id.* Fortunately, Officer Cherry was quick enough to jump back to avoid the knife. *Id.* at 10-11. Officer Edwards deployed another charge of the taser to keep Appellant from swinging the knife again. *Id.* at 12-13. Once he hit Appellant again, the knife flew out of his hand and landed towards the bathroom. *Id.* at 13. The officers then handcuffed Appellant. *Id.* After the incident, Ms. Mollo was taken to the hospital and as a result of Appellant's assault, sustained a punctured lung. *Id.* at 22. She remained at Temple Hospital for about 5 days. N.T. 2/8/16 at 22.

Trial Ct. Op. at 2-4.

Appellant was convicted of the aforementioned charges on February 9, 2016, and sentenced on July 18, 2016. He filed a timely notice of appeal.

Appellant raises two issues for our review:

A. Was the evidence insufficient to establish [Appellant] had a specific intent to kill Cheryl Mollo, a necessary element of attempted murder?

B. Was the evidence insufficient to establish aggravated assault on Police Officer Cherry, as Mr. Aiello did not attempt to -- or take any substantial step toward -- causing serious bodily injury[?]

Appellant's Brief at 2 (trial court's answers omitted).

Both of Appellant's challenges concern the sufficiency of the evidence.

---

[3] Officer Edwards's first name does not appear in the certified record.

In reviewing the sufficiency of the evidence, our standard of review is as follows:

> Whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. . . . Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Fortson*, 165 A.3d 10, 14–15 (Pa. Super.) (citation and internal brackets omitted) (some formatting), *appeal denied*, 174 A.3d 558 (Pa. 2017).

Appellant first contends that the Commonwealth failed to establish that he "acted with specific intent to kill Ms. Mollo," and, accordingly, "the evidence was insufficient to prove attempt to commit murder." Appellant's Brief at 10.

> A person commits an attempt when, with the intent to commit a specific crime, he does any act which constitutes a substantial step towards the commission of that crime." 18 Pa.C.S. § 901(a).

> "For a defendant to be found guilty of attempted murder, the Commonwealth must establish specific intent to kill." *Commonwealth v. Geathers*, 847 A.2d 730, 734 (Pa.Super.2004). Therefore, "[i]f a person takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act, he may be convicted of attempted murder." *In re R.D.*, 44 A.3d 657, 678 (Pa.Super.2012). "The Commonwealth may establish the mens rea required for first-degree murder, specific intent to kill, solely from circumstantial evidence." *Id.* Further, our Supreme Court has repeatedly determined that "**[t]he use of a deadly weapon on a vital part of the body is sufficient to establish the specific intent to kill**." *Commonwealth v. Rega*, 593 Pa. 659, 933 A.2d 997, 1009 (2007); *see also Commonwealth v. Cousar*, 593 Pa. 204,

> 928 A.2d 1025, 1034 (2007) ("a specific intent to kill may be inferred from the use of a deadly weapon on a vital part of the victim's body.").
>
> ***Commonwealth v. Tucker***, 143 A.3d 955, 964 (Pa. Super. 2016), *appeal denied*, 143 A.3d 955 (Pa. 2017).

***Fortson***, 165 A.3d at 15 (emphasis added); ***accord Commonwealth v. Thomas***, ___ A.3d ___, 2018 PA Super 221, 2018 WL 3679940, *6 (Aug. 3, 2018) (fact-finder "may infer that the defendant had the specific intent to kill the victim based on the defendant's use of a deadly weapon upon a vital part of the victim's body" (citation omitted)).

A butcher knife has long been considered a "deadly weapon" in Pennsylvania. ***Commonwealth v. Blakeney***, 946 A.2d 645, 649, 652 (Pa. 2008); ***Commonwealth v. Festa***, 40 A.2d 112, 114 (Pa. Super. 1944) (list of examples of "a great variety of instruments employed ordinarily for useful, practical purpose" that could still be considered "deadly weapons" includes "a butcher's knife"); ***see also Commonwealth v. Raybuck***, 915 A.2d 125, 128 (Pa. Super. 2006) ("Not surprisingly, guns, knives, and other clearly offensive weapons constitute the most obvious and commonly encountered forms of deadly weapons.").

In ***Blakeney***, 946 A.2d at 652, the Supreme Court of Pennsylvania stated that a "jury could readily infer specific intent to kill" when the appellant stabbed the victim "in the chest, a vital part of the body," "with a butcher knife[,]" thus supporting an attempted murder conviction.

Here, Appellant seized a butcher knife from the kitchen, put it against Ms. Mollo's chest, then stabbed her in the lung, near her heart. Trial Ct. Op.

at 2-4 (citing N.T., 2/8/2016, at 16-17, 19, 22). Ms. Mollo spent five days in the hospital thereafter.

Appellant's use of a butcher knife – a deadly weapon – on a vital part of Ms. Mollo's body – her chest – is consequently sufficient to establish the specific intent to kill and, thus, to establish attempted murder. **See Blakeney**, 946 A.2d at 649, 652; **Thomas**, 2018 WL 3679940 at *6; **Fortson**, 165 A.3d at 15; **Raybuck**, 915 A.2d at 128; **Festa**, 40 A.2d at 114; Trial Ct. Op. at 2-4 (citing N.T., 2/8/2016, at 16-17, 19, 22). Accordingly, Appellant's first issue is meritless.

Next, Appellant argues that "the Commonwealth failed to establish that [he] attempted to cause or took any step toward causing serious bodily injury to Officer Cherry." Appellant's Brief at 13. He maintains that his action of swinging the knife towards Officer Cherry was "an involuntary act caused by the shock of the taser and head trauma." **Id.** at 15. He continues that the Commonwealth's evidence did not prove that [he] made a conscious effort or voluntary physical act toward causing serious bodily injury to Officer Cherry." **Id.** at 16.

"A person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another . . ." 18 Pa.C.S. § 2702(a)(1). "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." **Id.** § 2301.

Pursuant to our standard of review, we are required to view all of the evidence admitted at trial in the light most favorable to the Commonwealth as the verdict winner. *Fortson*, 165 A.3d at 14. In the light most favorable to the Commonwealth, Appellant intended to injure Officer Cherry when he swung the knife. The fact that Appellant did not swing the knife when he was first hit by the Taser but waited until Officer Cherry approached undermines his suggestion that the action was involuntary, Trial Ct. Op. at 3 (citing N.T., 2/9/2016, at 10), as does the fact that he did not release the knife until he received a second charge from the Taser. *Id.* at 4 (citing N.T., 2/9/2016, at 12-13). Additionally, Appellant had previously articulated his intent to harm the officers when he threatened to kill them and warned that there were going to be "problems" if the officers approached him. Trial Ct. Op. ta 3 (citing N.T., 2/9/2016, at 8-9). Hence, although we may not re-weigh the evidence nor substitute our judgment for the fact-finder, *Fortson*, 165 A.3d at 14, as Appellant requests we do, Appellant's Brief at 15-16, there was still sufficient evidence to establish that Appellant attempted to cause serious bodily injury to Officer Cherry. The evidence was thereby sufficient to establish aggravated assault, and Appellant's second challenge is also without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/25/18