**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**BAER, C.J., TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 27 EAP 2021 |
| | : | |
| Appellee | : | Appeal from the Judgment of |
| | : | Superior Court entered on March |
| | : | 23, 2021 at No. 1313 EDA 2018 |
| v. | : | Affirming the Judgment of Sentence |
| | : | entered on April 27, 2018 in the |
| | : | Court of Common Pleas, |
| ALEXIS LOPEZ, | : | Philadelphia County, Criminal |
| | : | Division at No. CP-51-CR-0004377- |
| Appellant | : | 2015. |
| | : | |
| | : | ARGUED: March 9, 2022 |

## OPINION

**JUSTICE DOUGHERTY**                    **DECIDED: August 16, 2022**

We granted discretionary review to consider whether Pennsylvania Rule of Criminal Procedure 706(C) requires a trial court to consider a defendant's ability to pay prior to imposing mandatory court costs at sentencing.[1] We hold it does not, and affirm the Superior Court.

**I.**

---

[1] Rule 706(C) provides: "The court, in determining the amount and method of payment of a fine or costs shall, insofar as is just and practicable, consider the burden upon the defendant by reason of the defendant's financial means, including the defendant's ability to make restitution or reparations." Pa.R.Crim.P. 706(C).

On June 30, 2015, Lopez entered a negotiated guilty plea to possession with intent to deliver a controlled substance. The trial court sentenced him to eleven and one-half to twenty-three months' imprisonment, followed by three years' probation. Six months later, the trial court granted Lopez's motion for early release on parole. Thereafter, Lopez violated the terms of his supervision three times. Prior to resentencing for his third violation, Lopez filed a "Motion for Ability-to-Pay Hearing at Sentencing to Waive Costs." His motion contended "Pennsylvania statutes and the Rules of Criminal Procedure require that this [c]ourt consider [his] ability to pay and waive court costs due to his indigence and the burden the costs would impose on him." Motion for Ability-to-Pay Hearing at Sentencing to Waive Costs, 4/20/2018 at 2. On April 27, 2018, the trial court denied the motion and sentenced Lopez to six to twenty-three months' imprisonment, with immediate parole, followed by two years' probation. In addition, the court ordered Lopez to pay $1,695.94 in mandatory court costs.

Lopez appealed, and his statement of errors complained of on appeal asserted, in pertinent part, "[a]t sentencing the court erred by imposing costs without making a mandated determination under Pa.R.Crim.P. 706(C) and 42 Pa.C.S. §9728(b.2) of whether this long time [sic] indigent defendant had the ability to pay the court costs." Statement of Errors Complained of on Appeal, 6/7/2018 at 1. In its opinion, the trial court responded this claim was "refuted" by *Commonwealth v. Childs*, 63 A.3d 323, 325 (Pa. Super. 2013), which held Rule 706 did not require the trial court to consider the defendant's ability to pay before imposing costs. *Commonwealth v. Lopez*, No. CP-51-CR-4377-2015, unpublished opinion at 2-3 (C.P. Philadelphia County filed Jul. 16, 2018) (Trial Court Opinion). The trial court disagreed with Lopez's argument *Childs* was

inconsistent with *Commonwealth v. Martin*, 335 A.2d 424 (Pa. Super. 1975) (*en banc*). The court reasoned *Martin* "addressed the sole issue of whether the trial court could impose a **fine** without considering ability to pay[, and] [t]here were no issues before the court regarding the legality of imposing mandatory costs or supervision fees without an ability-to-pay hearing." Trial Court Op. at 3 (emphasis in original). Accordingly, the trial court concluded it was bound by *Childs*.

The Superior Court affirmed Lopez's judgment of sentence in a split, published *en banc* decision.[2] *See Commonwealth v. Lopez*, 248 A.3d 589 (Pa. Super. 2021) (*en banc*). The *en banc* panel held: "[w]hen the sections of Rule 706 are read sequentially and as a whole, as the rules of statutory construction direct, it becomes clear that Section C only requires a trial court to determine a defendant's ability to pay at a hearing that occurs prior to incarceration, as referenced in Sections A and B." *Id.* at 592; *see also id.* at 593 ("Section C, when read in context with its surrounding sections, only requires a court to determine a defendant's ability to pay before incarceration for delinquency, not before the imposition of all financial obligations at sentencing."). The panel noted its holding was consistent with *Commonwealth v. Ciptak*, 657 A.2d 1296 (Pa. Super. 1995) (per Hoffman, J., with two judges concurring in result), *rev'd on other grounds*, 665 A.2d 1161 (Pa. 1995). The panel also noted this Court "had the opportunity to explicitly repudiate" *Ciptak*

---

[2] President Judge Panella authored the majority opinion, which was joined by Judges Stabile, Mclaughlin, King, and McCaffery. Judge Nichols concurred in the result. Judge Dubow authored a concurring and dissenting opinion, which was joined by Judge Kunselman.

"when renumbering Rule 1407 as Rule 706 and it did not do so." *Id.* at 593.[3] On the contrary, the panel asserted, this Court recently indicated its agreement with *Ciptak* when it stated: "'[a]lthough a **presentence** ability-to-pay hearing is not required when costs alone are imposed, our Rules of Criminal Procedure provide that a defendant cannot be committed to prison for failure to pay a fine or costs unless the court first determines that he or she has the financial means to pay.'" *Id.* at 593-94, *quoting Commonwealth v. Ford*, 217 A.3d 824, 827 n.6 (Pa. 2019) (emphasis in original).

The panel rejected Lopez's arguments Section 9721(c.1) and Section 9728(b.2) of the Sentencing Code require the sentencing court to consider the ability to pay before imposing mandatory costs. *See id.* at 594, *citing* 42 Pa.C.S. §§9721(c.1), 9728(b.2). In this regard, the panel reasoned that while both statutes reference Rule 706(C), these references do not place an affirmative duty on a sentencing court to hold an ability-to-pay hearing prior to imposing mandatory costs upon a defendant. "Rather," the panel ruled, "when read in the context of the mandate to impose costs, those references merely make it clear that even though the imposition of court costs upon a defendant is mandatory, the defendant remains entitled to an ability-to-pay hearing before being imprisoned for defaulting on those mandatory costs." *Id.* The panel expressed the view its interpretation of Sections 9721(c.1) and 9728(b.2), and Rule 706 "most closely aligns" with the single case cited in the Comment to Rule 706, *Commonwealth ex rel. Benedict v. Cliff*, 304 A.2d 158 (Pa. 1973). *Id.* In that case, the panel recounted, this Court held a defendant has the constitutional right to an opportunity to show he cannot afford a fine or costs prior to

---

[3] Rule 1407 was renumbered as Rule 706 in 2000. The language of former Rule 1407 was materially identical to the language of the current Rule 706.

being incarcerated for nonpayment. *See id.*, *citing Benedict*, 304 A.2d at 161. The panel concluded the trial court properly relied on *Childs*, and agreed with the trial court's determination *Childs* is not inconsistent with the *en banc* decision in *Martin* because *Martin* involved the imposition of a fine rather than mandatory court costs. Finally, the panel emphasized its opinion should not be construed to strip the trial court of the discretion to conduct an ability-to-pay hearing at sentencing, but instead should simply be understood to not require a hearing "unless and until a defendant is in peril of going to prison for failing to pay the costs imposed on him." *Id.* at 595.

In Judge Dubow's concurring and dissenting opinion, she agreed with the majority's implicit determination the trial court has the authority to consider a motion to waive costs at sentencing. She disagreed, however, with the majority's holding that if a motion to waive costs is filed, the trial court has the discretion to decide whether or not to consider evidence regarding the motion. In her view, "the trial court must hold a hearing" in this context. *Id.* at 598 (Dubow, J., concurring in part). Judge Dubow also expressed her disagreement with *Childs*, and indicated she would expressly overrule it. Specifically, she argued *Childs* "misread" Sections 9721(c.1) and 9728(b.2), which she construed to provide the trial court with the authority to consider a motion to waive court costs at sentencing. *Id.* In addition, she contended *Childs* mistakenly relied on *dicta* in *Commonwealth v. Hernandez*, 917 A.2d 332 (Pa. Super. 2007), and on *Hernandez*'s interpretation of Sections 9721 and 9728, which predated the 2010 amendments to these provisions adding Subsections c.1 and b.2. While Judge Dubow agreed with Lopez the trial court erred in refusing to hold a hearing on his motion to waive costs, she disagreed with his argument the trial court is required to consider *sua sponte* the defendant's ability

to pay before imposing costs, even in the absence of a motion to waive costs. Judge Dubow was of the view "the trial court lacks the authority to raise the issue *sua sponte*." *Id.*

## II.

We granted Lopez's petition for allowance of appeal, and rephrased the issue as follows: "Whether Pennsylvania Rule of Criminal Procedure 706(C) requires a trial court to consider a defendant's ability to pay prior to imposing mandatory court costs at sentencing?" *Commonwealth v. Lopez*, 261 A.3d 1031 (Pa. 2021) (*per curiam*). The proper interpretation of a rule of criminal procedure is a question of law, for which the standard of review is *de novo* and the scope of review is plenary. *See Commonwealth v. Hann*, 81 A.3d 57, 65 (Pa. 2013).

Lopez argues Rule 706(C) requires a trial court to consider a defendant's ability to pay before imposing mandatory court costs at sentencing. He asserts the plain language of the rule dictates this conclusion. In particular, he emphasizes Rule 706(C) uses the word "shall," which is generally employed to indicate a mandatory obligation. In addition, he notes that, unlike the other sections of Rule 706, Section (C) does not refer to a hearing. On the other hand, he argues, Section (C) is the only provision of the rule referencing restitution, which must be ordered at sentencing. He contends that in any situation involving the payment of money "the amount and method of payment[,]" language specifically used in Section (C), are determined at the outset, which in this context means when the sentence is initially imposed. "For example," he offers, "if an individual applied for a bank loan, the bank officer would have to decide whether to issue the loan at all, and if so, the amount and method of payment." Appellant's Brief at 19.

Lopez argues "[t]he Superior Court *en banc* in [*Martin*] had no difficulty applying the plain mandatory language of this provision, reversing a trial court's decision to impose a fine when failing to consider all information concerning a defendant's ability to pay." *Id.* at 13. He claims as well that Section 7.02(4) of the Model Penal Code of 1962, and Section 3302(1) of the National Commission on Reform of Federal Criminal Laws Final Report of 1971, support his preferred construction of Rule 706(C). He maintains "the Legislature has employed the same 'the amount and method of payment' language when it intends the determination to be made at sentencing when imposing a fine (42 Pa.C.S. § 9726(d)) or restitution ([18] Pa.C.S. § 1106(c)(2))." *Id.* at 20. He criticizes the *en banc* panel majority's reliance on *Ciptak* because the two other judges on the panel in that case joined in the result only, and this Court subsequently reversed the panel's decision. Further, Lopez insists "Rule 706(C) should be interpreted consistently with 42 Pa.C.S. §§9721 and 9728 which address the same subject matter of imposing costs and inability to pay." *Id.* at 24. According to him, the language of "Rule 706(C) alone, and when read together with these statutes, provides that a judge must determine at sentencing whether all costs, including 'mandatory' ones, should be waived or reduced because of a defendant's inability to pay." *Id.* at 30.

Lopez forwards several policy justifications for his preferred construction of Rule 706(C). For one, he contends inquiring into defendants' ability to pay prior to ordering costs would benefit crime victims by allowing trial courts to decrease or waive costs for defendants shown to have limited financial resources so that they can maximize their restitution payments to victims. In addition, he argues defendants ordered to pay costs they cannot afford may suffer harmful consequences, such as the issuance of a bench

warrant, incarceration for up to seventy-two hours before a bench warrant hearing, ineligibility for expungement or a pardon, and disqualification from government assistance. He also maintains imposing costs on indigent defendants like him makes poor economic sense, as the expense of collecting the costs exceeds the payments received. Lastly, Lopez asserts Rule 706(C) should be construed to require an ability to pay determination at sentencing to avoid "serious constitutional concerns" under the Excessive Fines Clause as well as "tension with due process and equal protection rights." *Id.* at 47-48.

The Commonwealth agrees with Lopez that Rule 706(C) requires a trial court to assess a defendant's ability to pay prior to ordering mandatory court costs at sentencing. Like Lopez, the Commonwealth contends the plain language of the rule mandates this result. Specifically, it reiterates Lopez's contention that "the phrase 'shall . . . consider' imposes a mandatory requirement on a trial court." Commonwealth's Brief at 7. It also seconds his view "the phrase 'in determining the amount and method of payment' shows that the required consideration of a defendant's ability to pay mandatory costs occurs when they are imposed—at sentencing." *Id.* at 9. The Commonwealth insists Rule 706 should not be read sequentially, as it has found "no authority . . . for the proposition that statutory construction demands a sequential reading of subsections to determine their place along the timeline of criminal proceedings." *Id.* at 13. On the contrary, the Commonwealth insists sections of a rule may appear out of order chronologically. It cites the "familiar example" of Rule 1925. *Id.*, *citing* Pa.R.A.P. 1925. According to the Commonwealth, "[a] trial court can file a Rule 1925(a) Opinion (addressing an appellant's claims) only **after** the appellant has filed a Rule 1925(b) Statement (providing a court with

notice of those claims)." *Id.* (emphasis in original). The Commonwealth emphasizes Rule 706 appears in part A of Chapter 7 of the Rules of Criminal Procedure titled "Sentencing Procedures," not part B titled "Post-Sentence Procedures," and it therefore "follows that **some** portion of Rule 706 is intended to control initial sentencing proceedings, yet all of the subsections other than Rule 706(C) involve post-sentence proceedings." *Id.* at 14 (emphasis in original). Again echoing Lopez, the Commonwealth asserts "reading Rule 706 in conjunction with Sections 9721 and 9728 makes clear that the relevant time for considering a defendant's ability to pay mandatory costs pursuant to Rule 706(C) occurs when a court determines the sentence to be imposed, *i.e.*, at sentencing." *Id.* at 16. The Commonwealth maintains this Court's decisions in *Ford* and *Commonwealth v. Weir*, 239 A.3d 25 (Pa. 2020), substantiate its construction of Rule 706(C). As for policy, the Commonwealth, like Lopez, argues interpreting Rule 706(C) to mandate consideration of the defendant's ability to pay before the imposition of costs will benefit victims of crime by freeing up more money to go towards restitution. As the Commonwealth puts it: "if a particular defendant lacks the ability to pay both costs and restitution, a trial court could waive costs[,] [and] [p]ayments made by a defendant who owes no court-imposed costs would therefore be allocated entirely to reimbursing victims." *Id.* at 21.

A total of sixteen *amici* have filed eight amicus briefs in support of the shared position of Lopez and the Commonwealth. The Fines and Fees Justice Center and the Cato Institute argue the Superior Court's construction of Rule 706(C) below, together with Pennsylvania's bench warrant system, which permits defendants to be imprisoned for three days for nonpayment of costs before having their first ability-to-pay hearing, will allow for unconstitutional seizures of defendants, who will be disproportionately poor and

people of color. Professors Beth Colgan and Jean Galbraith contend Rule 706(C) should be construed to require consideration of the ability to pay costs at sentencing to avoid conflict with the Excessive Fines Clause. Community Legal Services, Philadelphia Lawyers for Social Equity, and Pennsylvania Legal Aid Network assert the failure to require consideration of the ability to pay costs at sentencing will perpetuate the hardships faced by poor people in the criminal justice system, including blocking access to pardons, expungement, employment, housing, higher education, and economic opportunity. The Public Defender Association of Pennsylvania and the Pennsylvania Association of Criminal Defense Lawyers emphasize that failing to take the ability to pay into account at sentencing can lead to incarceration, civil judgments, and deductions from inmate accounts, and additionally argue Rule 706(C) is a stand-alone provision requiring courts to consider a defendant's ability to pay costs, including mandatory costs, when imposing them. The American Civil Liberties Union of Pennsylvania and the Pennsylvania Interbranch Commission for Gender, Racial, and Ethnic Fairness contend interpreting Rule 706(C) as mandating an ability-to-pay inquiry at sentencing is historically and textually appropriate and consistent with the will of the legislature as expressed in Sections 9721 and 9728. The Office of the Controller of Allegheny County apprises us the majority of court costs imposed on indigent defendants in Allegheny County are never collected, and given the burdens costs place on both defendants and the County in administering their collection, urges consideration of ability to pay at sentencing. Pennsylvanians for Modern Courts posits that up front ability-to-pay determinations will increase the amount collected because defendants are more likely to pay when the amount is proportional to their financial means, reduce the costs of collection, and

mitigate the collateral consequences of default such as driver's license suspension. Finally, the Coalition Against Domestic Violence, Women's Law Project, and Women's Resource Center advocate for consideration of the ability to pay costs at sentencing because when unaffordable costs are added on top of court-ordered victim restitution, the likelihood of meaningful restitution significantly decreases.

### III.

Notwithstanding the alignment of the parties and *amici* regarding the meaning of Rule 706(C), it is, of course, the province of this Court to construe the rule. *See Corman v. Acting Sec'y of Pa. Dep't of Health*, 266 A.3d 452, 486 (Pa. 2021) ("'It is emphatically the province and duty of the judicial department to say what the law is.'"), *quoting Marbury v. Madison*, 5 U.S. 137, 177 (1803). "To the extent practicable," we construe the rules of criminal procedure "in consonance with the rules of statutory construction." Pa.R.Crim.P. 101(C). Under the rules of statutory construction, "[t]he object of any rule interpretation 'is to ascertain and effectuate the intention of' this Court." *Commonwealth v. Sepulveda*, 144 A.3d 1270, 1279 n.18 (Pa. 2016), *quoting* 1 Pa.C.S. §1921(a). "The plain language of a [rule] is the best indicator of such intent." *Commonwealth v. Edwards*, 256 A.3d 1130, 1137 (Pa. 2021). "In construing the language, . . . and giving it effect, 'we should not interpret [the rule's] words in isolation, but must read them with reference to the context in which they appear.'" *Commonwealth v. Giulian*, 141 A.3d 1262, 1267 (Pa. 2016), *quoting Roethlein v. Portnoff Law Assocs., Ltd.,* 81 A.3d 816, 822 (Pa. 2013); *see also Estate of Benyo v. Breidenbach*, 233 A.3d 774, 782 (Pa. 2020) ("We interpret [rule] language 'not in isolation, but in the context in which it appears.'"), *quoting Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1027

(Pa. 2018). "[W]e may consult the explanatory comment of the committee which worked on the rule in determining the proper construction and application thereof." *Commonwealth v. Harth*, 252 A.3d 600, 617 (Pa. 2021); *see also Commonwealth v. Martin*, 388 A.2d 1361, 1363 (Pa. 1978) ("While the comments to our Rules are not binding, they are useful tools for resolution of questions of interpretation under the Rules."). Moreover, a rule must be construed, so far as possible, to be consistent with other provisions *in pari materia* with it, that is, provisions relating to the same persons or things or the same class of persons or things. *See* 1 Pa.C.S. §1932.

Applying these principles of construction, we hold Rule 706(C) does not require the trial court to consider a defendant's ability to pay prior to imposing mandatory court costs at sentencing. We begin with the plain language of the rule, which provides in its entirety:

> (A) A court shall not commit the defendant to prison for failure to pay a fine or costs unless it appears after hearing that the defendant is financially able to pay the fine or costs.
>
> (B) When the court determines, after hearing, that the defendant is without the financial means to pay the fine or costs immediately or in a single remittance, the court may provide for payment of the fines or costs in such installments and over such period of time as it deems to be just and practicable, taking into account the financial resources of the defendant and the nature of the burden its payments will impose, as set forth in paragraph (D) below.
>
> (C) The court, in determining the amount and method of payment of a fine or costs shall, insofar as is just and practicable, consider the burden upon the defendant by reason of the defendant's financial means, including the defendant's ability to make restitution or reparations.
>
> (D) In cases in which the court has ordered payment of a fine or costs in installments, the defendant may request a rehearing on the payment schedule when the defendant is in default of a payment or when the defendant advises the court that such default is imminent. At such hearing, the burden shall be on the defendant to prove that his or her

financial condition has deteriorated to the extent that the defendant is without the means to meet the payment schedule. Thereupon the court may extend or accelerate the payment schedule or leave it unaltered, as the court finds to be just and practicable under the circumstances of record. When there has been default and the court finds the defendant is not indigent, the court may impose imprisonment as provided by law for nonpayment.

Pa.R.Crim.P. 706.

Importantly, Rule 706(C) does not exist in isolation. It is the third section of a four-section rule. The rule's three other sections clearly refer to post-sentencing proceedings after the court has already ordered costs at sentencing. Specifically, Section (A) requires the court to conduct an ability-to-pay hearing prior to imprisoning a defendant for failing to pay costs already imposed, Section (B) permits the court to order previously imposed costs to be paid in installments, and Section (D) allows for a rehearing if a defendant is in imminent or actual default on such installment payments. Indeed, the Commonwealth concedes "all of the [ ] sections other than Rule 706(C) involve post-sentence proceedings." Commonwealth's Brief at 14. Moreover, Sections (A), (B), and (D) each plainly appear in chronological order. Under the express terms of the rule, the ordering of payment in installments under Section (B) follows the ability-to-pay hearing under Section (A), *see* Pa.R.Crim.P. 706(B) ("When the court determines, after hearing . . . "), and a rehearing under Section (D) comes after the ordering of installment payments, *see* Pa.R.Crim.P. 706(D) ("In cases in which the court has ordered payment of a fine or costs in installments . . . "). Further, the language of Section (A) gives no indication this provision involves anything other than an initial inquiry into the defendant's ability to pay. Section (A) does not refer in any way to a previous determination of ability to pay under Section (C). In this regard, Section (A) stands in clear contrast to Section (D), which explicitly refers to a "rehearing" on the defendant's ability to pay. Viewed, as it must be,

in the context of the other sections of Rule 706, it is apparent Rule 706(C), like the rest of the rule, pertains to post-sentencing proceedings and appears in chronological order. That is, Rule 706(C) concerns the court's post-sentence determination of the amount and method of payment after the defendant has defaulted and the court has found, following a hearing, that the defendant is without the financial means to pay. Construed in this fashion, Section (C) is not redundant of Section (B). Section (B) concerns payment in installments whereas Section (C) pertains to the amount and method of payment.

To accept the parties' argument Section (C) imposes an obligation on the court to consider the defendant's ability to pay at sentencing prior to the initial imposition of costs would be to conclude that the Court ensconced in the middle of a rule otherwise pertaining exclusively to post-sentencing proceedings a single provision uniquely concerning the sentencing itself. It would also involve the conclusion that, notwithstanding the fact all the other sections of Rule 706 are listed in chronological sequence, the Court inexplicably placed Section (C) entirely out of order, after two sections referring to later points in time. Further, accepting the parties' argument would involve an atextual reading of Section (A) as providing for a reevaluation of the defendant's ability to pay rather than a first-order consideration of his financial means. Acceding to the parties' position regarding Rule 706(C) would, in short, completely unmoor this provision from its surrounding language and context and construe its wording in artificial isolation. The rules of construction forbid such an interpretation. *See Estate of Benyo*, 233 A.3d at 782; *Giulian*, 141 A.3d at 1267.

Our contextual reading of Rule 706(C) is also bolstered by consideration of the comment to the rule. The comment begins with a "see generally" cite to our decision in *Benedict*. The citation to *Benedict* indicates this decision occasioned the adoption of the

rule, which was approved less than three months later. *See* Pa.R.Crim.P. 706, Note (noting rule was "approved July 23, 1973"); *see also* Appellant's Brief at 20 n.7 ("The adoption of Rule 706(C) in 1973 was shortly after this Court's decision in [*Benedict*.]"). *Benedict* involved a constitutional challenge to a court policy of immediately imprisoning defendants unable to pay fines or costs despite their indigency:

> The appellants contend that the equal protection clause of the fourteenth amendment of the United States Constitution prohibits a state court from incarcerating a defendant for failure to pay a fine and/or cost without an opportunity at liberty to pay the fine and/or cost where immediate compliance is prevented by indigency. The appellants state that it has been the consistent policy of the Courts of Lancaster County where defendants are unable to pay fine and cost, whether a prison sentence is also given or not, to immediately commit in default and require the individual to serve three (3) months for each fine imposed prior to allowing the defendant to sign a Pauper's Oath and gain his or her release. . . . We are called upon to determine whether such a procedure is permitted by the laws of this Commonwealth and consistent with the mandates of the Constitution of the United States.

304 A.2d at 160 (footnotes omitted). This Court first held, with respect to the imposition of fines:

> a defendant may not be incarcerated merely because he cannot make full payment of a fine. . . . Therefore, we hold that the appellants must be given the opportunity to establish that they are unable to pay the fine. Upon a showing of indigency, the appellants should be allowed to make payments in reasonable installments.

*Id.* at 161 (footnote omitted). The Court then held the same safeguards should apply in the context of imposing costs:

> There is no basis in logic or law to permit a person who is fined for his wrongdoing to escape immediate imprisonment because of indigency and yet ignore the financial status of one who has incurred legal obligations through illicit conduct. The absurdity of such a distinction is graphically demonstrated when we consider that the imposition of a fine serves [o]nly the end of punishment, whereas an order to pay expenses incurred, although having punitive overtones, is primarily imposed to reimburse those costs that resulted from the individual's acts. There is

obviously more reason in the latter instance to afford a reasonable opportunity for payment than the former.

*Id.* at 162.

Thus, *Benedict* exclusively concerned incarceration for the failure to pay fines or costs, not the initial imposition of these obligations, and held that before a defendant may be imprisoned for failing to pay a fine or costs, he must be given the opportunity to establish his inability to pay, and upon a showing of indigency, be permitted to make payments in reasonable installments. But the *Benedict* Court went no further. It did not so much as consider, much less mandate, a presentence assessment of the defendant's ability to pay. The comment's citation to *Benedict* reflects Rule 706's function and purpose to enact the limited holding of a recently decided case, namely, to require an ability-to-pay hearing prior to imprisonment for failure to pay a fine or costs and permit installment payments upon a showing of demonstrated need.

Moreover, the comment explicitly contemplates bench warrants will be issued for defendants unable to pay fines or costs:

> Under this rule, when a defendant fails to pay the fine and costs, the common pleas court judge may issue a bench warrant for the collection of the fine and costs. When a "failure to pay" bench warrant is issued, the bench warrant must be executed by a police officer following the procedures set forth in Rule 431(C)(1)(c) and (C)(2), or, **if the defendant is unable to pay**, the police officer must proceed as provided in Rule 150 (Bench Warrants).

Pa.R.Crim.P. 706 cmt. (emphasis added). The import of this language is that while the rule forecloses incarceration in the event of penury, it does not preclude consequences short of imprisonment such as bench warrants. On the contrary, it is permissible for bench warrants to be ordered for defendants financially unable to pay.

Construing Rule 706(C) together with Sections 9721(c.1) and 9728(b.2), statutes *in pari materia* with the rule, further substantiates that the rule does not require presentence consideration of the defendant's ability to pay. Section 9721(c.1) provides:

> **(c.1) Mandatory payment of costs.**--Notwithstanding the provisions of section 9728 (relating to collection of restitution, reparation, fees, costs, fines and penalties) or any provision of law to the contrary, in addition to the alternatives set forth in subsection (a), the court shall order the defendant to pay costs. In the event the court fails to issue an order for costs pursuant to section 9728, costs shall be imposed upon the defendant under this section. No court order shall be necessary for the defendant to incur liability for costs under this section. The provisions of this subsection do not alter the court's discretion under Pa.R.Crim.P. No. 706(C) (relating to fines or costs).

42 Pa.C.S. §9721(c.1). Section 9728(b.2) provides:

> **(b.2) Mandatory payment of costs**.--Notwithstanding any provision of law to the contrary, in the event the court fails to issue an order under subsection (a) imposing costs upon the defendant, the defendant shall nevertheless be liable for costs, as provided in section 9721(c.1), unless the court determines otherwise pursuant to Pa.R.Crim.P. No. 706(C) (relating to fines or costs). The absence of a court order shall not affect the applicability of the provisions of this section.

42 Pa.C.S. §9728(b.2). These provisions require that, even if the court fails specifically to order costs, they must nonetheless be imposed upon the defendant, and the defendant is nonetheless liable for them. Thus, Sections 9721(c.1) and 9728(b.2) obviously do not require the court to consider the defendant's ability to pay prior to the imposition of costs. Indeed, the statutes do not require any court involvement whatsoever before costs are imposed. Accordingly, interpreting Rule 706(C) to require a presentence ability-to-pay inquiry would place the rule directly at odds with Sections 9721(c.1) and 9728(b.2), contrary to our obligation to construe these *in pari materia* provisions together as a consistent whole.

Similarly, the references to Rule 706(C) in Sections 9721(c.1) and 9728(b.2) cannot reasonably be read to require courts to engage in obligatory assessments of the ability to pay prior to imposing costs. To construe these references as mandating presentence ability-to-pay inquiries would render the statutes at war with themselves, requiring the automatic imposition of costs even in the absence of court involvement on the one hand, while simultaneously, and irreconcilably, requiring the court's presentence consideration of the ability to pay on the other. In fact, interpreting the Rule 706(C) references to mandate a presentence ability-to-pay inquiry by the court would give no effect at all to the statutory language providing costs shall be imposed even without a court determination. If the court must assess the defendant's ability to pay prior to imposing costs at sentencing, then costs could never be imposed in the total absence of the court's participation. Our rules of statutory construction, however, demand that "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. §1921(a). Rather than incongruously requiring an ability-to-pay determination at the time of sentencing, the references in Sections 9721(c.1) and 9728(b.2) to Rule 706(C) provide for the post-sentence modification or waiver of costs upon a proper showing of insufficient financial means. These statutes, like the rule itself, must be read in context.

Our construction of Rule 706(C) finds additional purchase in our recent decision in *Ford*. There, as part of a negotiated plea agreement, the defendant was ordered to pay four fines, three of which were not mandatory. *See Ford*, 217 A.3d at 827-28. *Ford* subsequently claimed his sentence was illegal because the court did not inquire into his ability to pay the fines pursuant to 42 Pa.C.S. §9726(c)(1) ("The court shall not sentence a defendant to pay a fine unless it appears of record that . . . the defendant is or will be

able to pay the fine[.]"). *See id.* at 826. "The Superior Court . . . concluded that Ford's three non-mandatory fines were illegal, given that it does not 'appear of record' that he is or will be able to pay them." *Id.* at 828. This Court "agree[d] with the Superior Court's conclusion that Ford received an illegal sentence when the trial court imposed non-mandatory fines without any evidence that Ford was (or would be) able to pay them." *Id.* at 831. The Court ruled "the plain language of [Section 9726] is clear: trial courts are without authority to impose non-mandatory fines absent record evidence that the defendant is or will be able to pay them." *Id.* at 829.

In so ruling, *Ford* made two points supporting our disposition *sub judice*. First, the Court noted: "Although a **presentence** ability-to-pay hearing is not required when costs alone are imposed, our Rules of Criminal Procedure provide that a defendant cannot be committed to prison for failure to pay a fine or costs unless the court first determines that he or she has the financial means to pay the fine or costs." *Id.* at 827 n.6 (emphasis in original), *citing* Pa.R.Crim.P. 706(A). Thus, albeit in *dicta*, this Court explicitly anticipated and endorsed our holding today: Rule 706 requires the court to determine the defendant's ability to pay prior to committing him to prison for a default but no sooner. Second, in specifying that only the "non-mandatory fines" were illegal, *Ford* indicated the sentencing court lacked discretion to modify or waive mandatory fines or costs. Again, the costs imposed here were mandatory, as the parties acknowledge, *see* Appellant's Brief at 6; Commonwealth's Brief at 3, and the question before us is whether the trial court must consider a defendant's ability to pay prior to imposing "mandatory" court costs at sentencing. *Lopez*, 261 A.3d 1031.

Our decision in *Commonwealth v. Nicely*, 638 A.2d 213 (Pa. 1994), also supports today's ruling. There, the Court held: "[t]he imposition of costs in a criminal case is not part of the sentence, but rather is incident to the judgment." *Id.* at 217. In support of this pronouncement, *Nicely* cited the Superior Court's then sixty-five-year-old decision in *Commonwealth v. Cauffiel*, 97 Pa. Super. 202 (Pa. Super. 1929), which similarly noted: "[t]he liability of a defendant for costs is not a part of the penalty imposed by the statutes which provide for the punishment of these offenses. Such liability is an incident of the judgment, arising out of our statutes providing for the payment of costs in criminal proceedings[.]" *Cauffiel*, 97 Pa. Super. at 205-06. Given the longstanding law in Pennsylvania providing that costs spring automatically from the judgment of guilt, Rule 706(C) was not intended to transform the automatic imposition of costs at judgment to a discretionary assessment at sentencing.

Superior Court precedent conforms to our construction of Rule 706(C). In *Ciptak*, the defendant raised the issue: "Did the trial court err in imposing the costs of prosecution on appellant without first determining [the] amount and method of payment as well as appellant's ability to pay and was trial counsel ineffective for [failing] to object or preserve the issue for appeal[?]" *Ciptak*, 657 A.2d at 1297. Ciptak "argue[d] that Pa.R.Crim.P. 1407(c) required the trial court to conduct a hearing to determine the total cost of prosecution, appellant's ability to pay and the method of payment, prior to imposing costs." *Id.* The panel rejected this argument, reasoning:

> [T]he rules of statutory construction indicate that Pa.R.Crim.P. 1407 deals in its entirety with a defendant's default from payment of a fine or the costs of prosecution. Rule 1407(a) of the Pennsylvania Rules of Criminal Procedure, precludes a court from imprisoning a defendant for failure to pay a fine or costs unless, following a hearing, the court determines that the defendant is capable of paying the sums due. In

part (b), the statute goes on to outline the forms of relief that the court may provide where it determines that the defendant lacks the financial means to pay the sums due, immediately or in a single remittance. The final provision of the statute, part (d), outlines the steps to be taken after the court has granted the defendant relief in the form of an installment payment plan if the defendant finds himself again in default or believes that default is imminent.

As the provisions of the statute which precede and follow Pa.R.Crim.P. 1407(c) set forth procedure regarding default on payment of costs or fines, we can only conclude that Pa.R.Crim.P. 1407(c) addresses the standard which the court must use in reviewing the defendant's default.

*Id.* at 1297-98.

In addition, in *Hernandez*, the Superior Court held Rule 706 "does not" "provide[ ] for a mandatory hearing on financial status at the time of sentencing[.]" *Hernandez*, 917 A.2d at 337. Moreover, in *Childs*, the defendant "argue[d] that the trial court erred in imposing costs without considering his ability to pay" pursuant to, *inter alia*, Rule 706(C). *Childs*, 63 A.3d at 325. The Superior Court held the rule included no such requirement:

Generally, a defendant is not entitled to a pre-sentencing hearing on his or her ability to pay costs. . . . While Rule 706 **permits** a defendant to demonstrate financial inability either after a default hearing or when costs are initially ordered to be paid in installments, the Rule only **requires** such a hearing prior to any order directing incarceration for failure to pay the ordered costs.

*Id.* at 326 (emphasis in original; citation and quotations omitted). Thus, it is apparent from multiple decisions by this Court and the Superior Court, as well as the plain language of the rule, its comment, and statutes *in pari materia*, that Rule 706(C) does not require consideration of the defendant's ability to pay prior to the imposition of mandatory court costs at sentencing.

The arguments to the contrary of the parties and dissent are not persuasive. Beginning with their arguments concerning Rule 706(C)'s language and context, it is true,

as Lopez and the Commonwealth emphasize, that the word "'shall'" is "'generally regarded as mandatory[.]'" *Commonwealth v. Baker*, 690 A.2d 164, 167 (Pa. 1997), *quoting Commonwealth v. Sojourner*, 518 A.2d 1145, 1148 (Pa. 1986). But the pertinent question is not whether the court has a duty under Rule 706(C) to "determin[e] the amount and method of payment of a fine or costs[,]" but when this duty arises. As discussed, given the context and sequential structure of Rule 706, the determination referenced in Section (C) is made post-sentence upon the defendant's default and a finding of his inability to pay. Similarly, the question of whether Section (C) specifically refers to a hearing relates to how the determination under this provision should be made, not when. Furthermore, while Rule 706(C) refers to restitution, it does not refer to the imposition of restitution, which, per statute, must occur at sentencing. *See* 18 Pa.C.S. §1106(c)(2). Rather, Section (C) calls for consideration of "the defendant's **ability to make** restitution[,]" Pa.R.Crim.P. 706(C) (emphasis added), that is, an assessment of whether the defendant is capable of paying restitution previously imposed.

Contrary to the parties' and dissent's contentions, the phrase "determining the amount and method of payment of a fine or cost" does nothing to pinpoint the timing of this provision to the initial sentencing. "Determine" in this context simply means "to officially decide something." *Determine*, MACMILLANDICTIONARY.COM, https://www.macmillandictionary.com/us/dictionary/american/determine (last visited Aug. 11, 2022). It does not connote an initial decision. There can be more than one "determination" of the amount and method of payment of costs. Indeed, the dissent concedes this is true. *See* Dissenting Opinion at 14 n.9. Moreover, Lopez's own loan example acknowledges that "[i]f a loan is issued there may be a later adjustment in the

method or amount of payment based on changed circumstances[.]" Appellant's Brief at 19-20. Rule 706(C) refers to a follow-on, post-sentence determination upon a finding of default and inability to pay, not an initial determination at sentencing.[4]

Nor does "the fact that Rule 706(C) speaks to both fines and costs suggest[ ]" the provision was meant to apply at sentencing. Dissenting Opinion at 7. If anything, the reference to "fines" further substantiates the rule applies post-sentence. As we have seen, there is an express statutory mandate requiring the trial judge to consider the defendant's ability to pay before imposing a fine at sentencing. *See* 42 Pa.C.S. §9726(c)(1). As such, construing Rule 706(C) to impose the same requirement would be redundant and duplicative.[5]

The dissent contends that when a court "adjust[s] the fine" post-sentence "the defendant has been resentenced and a whole new round of appeals is available." Dissenting Opinion at 7-8. Assuming, without deciding, the dissent is right about this, we

---

[4] The dissent claims "[t]he majority assumes that an initial 'determination' can take place after sentencing, but that is incompatible with the statutory sources as the determination is, as a technical matter, made by law if the trial judge does not order costs." Dissenting Opinion at 8-9. We assume no such thing. Our holding that Rule 706(C) does not apply at sentencing does not defer the initial determination of costs to after sentencing. Rather, the initial determination is made by the court at sentencing, or by operation of law if the court fails to act.

[5] The dissent argues "we should expect and indeed encourage this type of 'redundancy[,]'" and cites as an example Pa.R.Crim.P. 705.1(A) and 42 Pa.C.S. §9721(c), which pertain to restitution. Dissenting Opinion at 8 n.5. The dissent contends: "[s]urely the Majority would not say that Rule 705.1(A) should be deleted because a statute already covers it." *Id.* We are not "delet[ing]" Rule 706(C); we are construing this provision pursuant to our rules of construction. In stark contrast to Rule 705.1(A), which by its express terms applies "[a]t the time of sentencing," Pa.R.Crim.P. 705.1(A), there is nothing in the language of Rule 706(C) rendering it applicable at sentencing, while there is much textual, contextual, precedential, and statutory support for concluding the provision applies post-sentence.

fail to see how the prospect of resentencing and a new appeal is relevant to the timing of Rule 706(C), much less how it supports applying this provision at sentencing. Indeed, given the dissent's agreement Rule 706(C) applies at default hearings, *see* Dissenting Opinion at 14 n.9 ("I agree with the Majority that Rule 706(C) would apply at a default hearing[.]"), the possibility of resentencing and a new round of appeals would be a consequence of the dissent's preferred holding as well.[6]

As for the Commonwealth's purported inability to find authority for construing the sections of Rule 706 sequentially, we note this Court has held time and again that the words of a rule or statute shall not be construed in artificial isolation but rather in the context in which they appear. *See, e.g.*, *Estate of Benyo*, 233 A.3d at 782, *Commonwealth by Shapiro*, 194 A.3d at 1027; *Giulian*, 141 A.3d at 1267; *Roethlein*, 81 A.3d at 822. This mandatory contextual analysis involves consideration of the temporal context established by surrounding language. Here, as the Commonwealth acknowledges, "all of the subsections other than Rule 706(C) involve post-sentence proceedings." Commonwealth's Brief at 14.

The Commonwealth proposes Rule 1925 as a "familiar example" of a procedural rule with out-of-sequence sections. *Id.* at 13. But contrary to the Commonwealth's argument, it is not the case that "[a] trial court can file a Rule 1925(a) Opinion . . . only after the appellant has filed a Rule 1925(b) Statement[.]" *Id.* (emphasis omitted). Rule 1925(b) is phrased permissively; it provides: "[i]f the judge entering the order giving rise

---

[6] The dissent insists this "is not true because, unlike fines, costs are not considered part of the sentence." Dissenting Opinion at 8 n.5. But again, as the dissent itself notes, "Rule 706(C) speaks to both fines and costs[.]" *Id.* at 7. Consequently, the dissent's position Rule 706(C) applies at default hearings would not "avoid[ ]" the adjustment of fines after sentencing. *Id.* at 8 n.5.

to the notice of appeal . . . desires clarification of the errors complained of on appeal, the judge **may** enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal[.]" Pa.R.A.P. 1925(b) (emphasis added). Rule 1925(a), on the other hand, is a largely mandatory provision, requiring a trial court opinion in effectively all appeals. *See* Pa.R.A.P. 1925(a)(1) ("Except as otherwise prescribed by this rule, upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, **shall** within the period set forth in Pa.R.A.P. 1931(a)(1) file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found."). Hence, Rule 1925 permits a trial court to file a Rule 1925(a) opinion in the absence of a Rule 1925(b) statement, and this is in fact quite common.[7]

The dissent's purported example of nonsequential rule provisions is also inapt. The dissent proposes that based on "sequential logic, Rule 704(C)(3) [of the Pennsylvania Rules of Criminal Procedure] should appear after" Pa.R.Crim.P. 705 and

---

[7] *See, e.g.*, *Commonwealth v. Vinson*, 249 A.3d 1197, 1201-02 (Pa. Super. 2021) ("The PCRA court did not order Appellant to file a Pa.R.A.P. 1925(b) statement, and consequently, Appellant did not file a Rule 1925(b) statement. The PCRA court filed a Pa.R.A.P. 1925(a) opinion."); *Commonwealth v. Woods*, 965 A.2d 1225, 1227 (Pa. Super. 2009) ("The trial court did not order a Pa.R.A.P. 1925(b) statement, and no such statement was filed by Appellant. The trial court filed a Pa.R.A.P. 1925(a) opinion addressing Appellant's contention that he was denied a speedy VOP hearing."); *Commonwealth v. Allen*, 856 A.2d 1251, 1252 n.1 (Pa. Super. 2004) ("The trial court did not order Appellant to file a Pa.R.A.P. 1925(b) statement of matters complained of on appeal. Appellant did not file a Rule 1925(b) statement. On January 7, 2004, the trial court filed its Rule 1925(a) opinion.").

Pa.R.Crim.P. 705.1. Dissenting Opinion at 6. On the contrary, Rule 704(C)(3) provides that at the time of sentencing, "[t]he judge shall determine on the record that the defendant has been advised of" certain rights and issues. Pa.R.Crim.P. 704(C)(3); *see also Commonwealth v. Flowers*, 149 A.3d 867, 871 (Pa. Super. 2016) ("Rule 704(C)(3) of the Rules of Criminal Procedure provides that at the time of sentencing, the sentencing judge shall determine on the record that the defendant has been advised of . . . the right to file a post-sentence motion and to appeal, of the time within which the defendant must exercise those rights, and of the right to assistance of counsel in the preparation of the motion and appeal.") (quotation marks and emphasis omitted); *Commonwealth v. Patterson*, 940 A.2d 493, 499 (Pa. Super. 2007) ("Rule 704(C)(3)(a) states that, at the time of sentencing, [t]he judge shall determine on the record that the defendant has been advised . . ., *inter alia*, of the right to file a post-sentence motion and to appeal, . . . [and] of the time within which the defendant must exercise those rights.") (quotation marks and emphasis omitted). Rule 705 states that "[w]hen imposing a sentence to imprisonment, the judge shall state the date the sentence is to commence[,]" and "[w]hen more than one sentence is imposed at the same time on a defendant, or when a sentence is imposed on a defendant who is sentenced for another offense, the judge shall state whether the sentences shall run concurrently or consecutively." Pa.R.Crim.P. 705. And Rule 705.1 requires that "[a]t the time of sentencing, the judge shall determine what restitution, if any, shall be imposed[,]" and "[i]n any case in which restitution is imposed, the judge shall state in the sentencing order: (1) the amount of restitution ordered; (2) the details of a payment plan, if any, including when payment is to begin; (3) the identity of the payee(s); (4) to which officer or agency the restitution payment shall be made; (5) whether any

restitution has been paid and in what amount; and (6) whether the restitution has been imposed as a part of the sentence and/or as a condition of probation." Pa.R.Crim.P. 705.1. Thus, each of these rules imposes obligations on the judge at the time of sentencing. They apply concurrently to the time of sentencing. The coterminous Rules 704(C)(3), 705, and 705.1 are not out of chronological sequence.

The Commonwealth and dissent give unwarranted significance to the placement of Rule 706 in Part A of Chapter 7 of our Rules of Criminal Procedure, titled "Sentencing Procedures," rather than in Part B, which is captioned "Post-Sentence Procedures." *See* Commonwealth's Brief at 14 ("This ordering further supports the conclusion that some portion of Rule 706 is intended to control a proceeding that occurs before post-sentence proceedings.") (emphasis omitted); Dissenting Opinion at 6 ("[I]f the Majority is correct that Rule 706 only applies after sentencing, its placement within Part A is illogical. Part B, addressing 'post-sentencing procedures,' is obviously a more logical home if so."). Rule 706 is hardly the only rule in Part A relating exclusively to post-sentence procedures. For instance, Pa.R.Crim.P. 707 is also included in Part A, yet no part of this rule applies to sentencing; it pertains to the transmission of documents when a defendant is delivered to state prison following sentencing. *See* Pa.R.Crim.P. 707. In addition, Pa.R.Crim.P. 708 likewise appears in part A, and this rule too solely concerns post-sentence procedures, specifically, proceedings in the event of a violation of probation, intermediate punishment, or parole. *See* Pa.R.Crim.P. 708.[8]

---

[8] While not disputing Rule 707 applies only after sentencing, the dissent notes the comment to this rule includes a reference to 42 Pa.C.S. §9764(b), which imposes a duty on the trial court that "can plausibly be described" as arising "in tandem with sentencing[.]" Dissenting Opinion at 6 n.3. The point here is not whether a statute related to Rule 707

The dissent argues "Lopez and the Commonwealth are correct that Rule 706(C) is the only Rule-based provision that could apply" to the imposition of costs at sentencing. Dissenting Opinion at 7; *see id.* at 8 ("The absence of any other Rule governing a trial court's imposition of fines and costs, which naturally must occur at the sentencing proceeding itself, lends strong support to Lopez's interpretation."). The suggestion that there must be a rule governing the imposition of costs at sentencing is erroneous. Experience has shown there are occasions where our rules of procedure do not address particular issues.[9] When confronted with such a circumstance we should, as we have in the past, forthrightly acknowledge the lack of an applicable rule, not shoehorn an inapposite provision to fill the void.

---

applies post-sentencing only, but whether the rule itself is so temporally limited. On that point there can be no question but that it is, as the rule concerns the post-sentence procedure of transmitting documents to state prison upon a prisoner's delivery into state custody. In any case, Section 9764(b) states that "[w]ithin ten days from the date sentence is imposed, the court shall provide to the county correctional facility[,]" *inter alia*, "[a] written, sealed sentencing order from the county" and "[t]he sentencing colloquy sealed by the court." 42 Pa.C.S. §9764(b)(5)(i), (ii). Hence, Section 9764(b) sets forth a post-sentence procedure. The dissent also notes Rule 708(D) covers resentencing upon revocation. *See* Dissenting Opinion at 6 n.3. Of course, resentencing can only occur after there has been an initial sentencing; resentencing is a post-sentence procedure.

[9] *See, e.g.*, *In re J.B.*, 106 A.3d 76, 96 (Pa. 2014) ("The Juvenile Rules of Court Procedure do not, at present, specify how a juvenile who has been adjudicated delinquent must present a weight of the evidence claim to the juvenile court so that the claim is preserved for appellate review."); *Newman Dev. Group of Pottstown, LLC v. Genuardi's Fam. Mkts., Inc.*, 52 A.3d 1233, 1251 (Pa. 2012) ("This case has revealed . . . that there are circumstances and nuances, involving appellate remands, that the current Rule [227.1 of the Pennsylvania Rules of Civil Procedure] does not account for."); *Commonwealth v. Banks*, 943 A.2d 230, 234 n.7 (Pa. 2007) ("There is not currently in place a specific procedure for the timely handling of [competency-to-be-executed] claims—either under the PCRA or other legislation, or under this Court's rules."); *see also Trigg v. Children's Hosp. of Pittsburgh of UPMC*, 229 A.3d 260, 274 (Pa. 2020) (Donohue, J., concurring) (noting that rules of civil procedure do not dictate mechanics of voir dire).

While we agree with Lopez and the Commonwealth that Rule 706(C) should be read "in conjunction with" and "consistently with" Sections 9721(c.1) and 9728(b.2), we fail to see how reading the rule together with these statutes supports their position the trial court "must determine at sentencing" whether a defendant is able to pay before mandatory court costs are imposed. Appellant's Brief at 24, 30; Commonwealth's Brief at 16. To the contrary, as discussed, these sections require costs to be imposed even in the absence of a court order. If no court action of any sort is required for a defendant to incur liability for costs, then perforce there is no requirement of a presentence ability-to-pay inquiry. An *in pari materia* construction of Rule 706(C) only confirms that the rule does not mandate presentence consideration of the defendant's ability to pay mandatory costs.

Purporting to account for the inherent contradiction in arguing that statutes mandating the imposition of costs without court involvement somehow also simultaneously mandate a court inquiry into the ability to pay, the dissent posits "one answer . . . is that a defendant is generally obligated to object or raise the issue if the trial court failed to consider the matter. If the judge neglects to conduct the inquiry and the defendant fails to object, the costs will be imposed by operation of law." Dissenting Opinion at 13-14. Respectfully, this is no answer at all. Sections 9721(c.1) and 9728(b.2) do not limit the automatic imposition of costs to instances where the defendant failed to argue for an ability to pay inquiry. Rather, they require the assessment of costs whenever the court has failed to order them, irrespective of what has been alleged by the defendant. *See* 42 Pa.C.S. §9721(c.1) ("In the event the court fails to issue an order for costs pursuant to section 9728, costs shall be imposed upon the defendant under this section.");

42 Pa.C.S. §9728(b.2) ("[I]n the event the court fails to issue an order under subsection (a) imposing costs upon the defendant, the defendant shall nevertheless be liable for costs, as provided in section 9721(c.1)[.]").  In any event, with or without the requirement of a defense waiver, the imposition of costs by operation of law in the absence of court intervention is still incompatible with an obligatory court assessment of the ability to pay at sentencing.

The dissent also points to the "contemporaneous legislative history" of Sections 9721(c.1) and 9728(b.2), and claims "these two amendments were prompted by *Spotz v. Commonwealth*, 972 A.2d 125 (Pa. Commw. 2009)."  Dissenting Opinion at 9-10.  In *Spotz*, the dissent explains, the Commonwealth Court "concluded that the relevant law 'authorize[d] only the deduction [from a prisoner's inmate account] of court-ordered, waivable costs, which are deductible only in the presence of a court order so specifying; however, non-waivable, statutorily mandated costs are deductible absent any express court order.'"  Dissenting Opinion at 10 (quoting *Spotz*, 972 A.2d at 134).  The dissent argues:

> In response to *Spotz*, the statutory amendments ensured that all court costs are mandatory and automatically imposed even without a court order. . . . [T]he facts [of *Spotz*] illustrate that trial courts often sentence defendants who will never be released and thus will never reappear for a Rule 706 hearing as interpreted by the Majority.  A defendant who is serving a life sentence or a death sentence is already imprisoned and thus there is no possibility that any nonpayment of court costs will result in incarceration. Thus, under the Majority's reasoning the General Assembly's attempt to address *Spotz* is ineffective as to those defendants.

*Id.* at 10-11.

The dissent's exclusive consideration of the legislative history of Sections 9721(c.1) and 9728(b.2) is puzzling.  In assessing enactment history, our primary focus,

should, of course, be the background of the provision we are actually construing, Rule 706(C). As discussed, the comment to Rule 706 reflects it was approved in response to *Benedict*, which was decided less than three months before the rule's approval in 1973, not the 2009 decision in *Spotz*. Again, *Benedict* held that to protect against the unconstitutional imprisonment of indigent defendants for failure to pay fines or costs, a court is required to inquire into the defendant's ability to pay prior to incarceration for a default, and to permit installment payments upon the demonstration of poverty. Rule 706 enacted this holding. The rule was not a response to *Spotz*'s decades-later ruling concerning the deductibility of costs from inmate accounts.

In addition, our construction of Rule 706 does nothing to frustrate the applicability of Sections 9721(c.1) and 9728(b.2) to life or death-sentenced defendants, or any other defendants for that matter. We simply hold that Rule 706 does not apply unless and until there has been a default in the payment of fines or costs. We do not hold that the threat of incarceration is the triggering event for applying Sections 9721(c.1) or 9728(b.2).

The dissent further contends the references to Rule 706(C) in Sections 9721(c.1) and 9728(b.2) "indicate[ ] that the General Assembly wished to remedy the mischief caused by wasting court resources." Dissenting Opinion at 11; *see also id.* at 12 ("I conclude that the General Assembly intended to address this type of waste by granting a trial court the power to waive costs under Rule 706(C)."). The more logical conclusion is that the General Assembly referenced Rule 706(C) for the same reason this Court adopted the rule in the first place, to wit, to prevent the unconstitutional practice of incarcerating indigent defendants for nonpayment. In any case, the object of our interpretation of Rule 706(C) "is to ascertain and effectuate the intention **of this Court**" in

adopting the rule, *Sepulveda*, 144 A.3d at 1279 n.18 (emphasis added; internal quotation omitted), not the intent of the legislature in adopting related statutes many years later. As to this Court's intention in promulgating Rule 706, given the citation to *Benedict* in the comment to the rule and approval of the rule very shortly after that decision, there can be no question that the "mischief" the Court "wished to remedy" was the imprisonment of impoverished defendants merely because they lacked the financial wherewithal to pay fines or costs. The "conserv[ation] [of] judicial resources" was not a motivating factor. Dissenting Opinion at 13.[10]

The parties' arguments premised on case law also leave us unpersuaded. Lopez's reliance on *Martin* is misplaced. In *Martin*, the "sole" issue before the Superior Court was whether "the lower court imposed an illegal **fine** upon the appellant." 335 A.2d at 424 (emphasis added). While the trial courts are explicitly required by statute to consider the defendant's ability to pay prior to ordering fines, there is no comparable statutory mandate for the imposition of costs, and *Martin* did not consider whether, much less hold that, there must be an ability-to-pay inquiry as to costs. In fact, in addition to a $5,000 fine, the "indigent" appellant in *Martin* was also "ordered to pay the costs of prosecution." 335 A.2d at 424-25. The costs portion of the judgment of sentence was not disturbed by the

---

[10] The dissent argues "[t]o the extent the Majority cabins our analysis to what the Court originally intended in 1973, then it should refer this matter to the Criminal Procedural Rules Committee in light of the legislative response to *Spotz*." Dissenting Opinion at 13 n.7. But, as the dissent acknowledges, "[t]he Majority offers ample support for its reading" of Rule 706(C). Dissenting Opinion at 6. We have certainly not "cabin[ed] our analysis" to the Court's intention in adopting Rule 706(C). Moreover, the legislative response to *Spotz* consisted of Sections 9721(c.1) and 9728(b.2). As discussed, these statutes corroborate our construction of Rule 706(C). They call for the automatic imposition of fees in the absence of a court order, and thus foreclose any requirement of a court inquiry into the ability to pay at sentencing.

*Martin* Court. *See id.* at 426 ("[W]e vacate that portion of the judgment of sentence wherein the appellant is ordered to pay a fine of $5000.00.").

Notwithstanding Lopez's arguments, we see nothing amiss in the *en banc* panel majority's reliance on *Ciptak* below. The majority found the cogent contextual analysis by the late distinguished Judge Sydney Hoffman in *Ciptak* to be persuasive. *See Lopez*, 248 A.3d at 592-93. So do we. Moreover, while this Court reversed *Ciptak* in a *per curiam* order, it did so on other grounds, and did not disapprove *Ciptak*'s construction of the rule. The Court solely considered the ineffectiveness component of Ciptak's claim, and remanded for the appointment of new counsel and an evidentiary hearing as to this aspect of the issue. *See Ciptak*, 665 A.2d at 1161-62.

The Commonwealth's reliance on *Ford* and *Weir* is misguided. Again, *Ford* held "trial courts are without authority to impose **non-mandatory fines** absent record evidence that the defendant is or will be able to pay them." 217 A.3d at 829 (emphasis added). This case does not involve non-mandatory fines, but rather mandatory costs. Indeed, as discussed, *Ford* supports today's holding by indicating that a presentence determination of the ability to pay is not required when costs alone are imposed. *See id.* at 827 n.6. In *Weir*, moreover, we held a challenge to the amount of restitution imposed under Section 1106 implicated the discretionary aspects of sentencing rather than the legality of the sentence, and was therefore subject to waiver. *See* 239 A.3d at 38. Hence, *Weir* addressed a very different issue, and we find no support there for the parties' position on Rule 706(C).

We are likewise unmoved by the model penal code provisions and statutes marshalled by Lopez. Specifically, Lopez relies on Section 7.02(4) of the Model Penal

Code of 1962, and Section 3302(1) of the National Commission on Reform of Federal Criminal Laws Final Report of 1971. These provisions, however, apply only to the imposition of fines, not costs. *See* Model Penal Code (MPC) §7.02(4) ("In determining the amount and method of payment of a fine, the Court shall take into account the financial resources of the defendant and the nature of the burden that its payment will impose."); Final Report of the National Commission on Reform of Federal Criminal Laws (Final Report) §3302(1) ("In determining the amount and the method of payment of a fine, the court shall, insofar as practicable, proportion the fine to the burden that payment will impose in view of the financial resources of the defendant."). Moreover, quite unlike Rule 706, there is abundant language in Sections 7.02 and 3302 clarifying they apply at sentencing. *See* MPC §7.02(1) ("The Court shall not sentence a defendant only to pay a fine, when any other disposition is authorized by law . . . "); MPC §7.02(2) ("The Court shall not sentence a defendant to pay a fine in addition to a sentence of imprisonment or probation unless . . . "); MPC §7.02(3) ("The Court shall not sentence a defendant to pay a fine unless . . . "); Final Report §3302(1) ("The court shall not sentence a defendant to pay a fine in any amount which will prevent him from making restitution or reparation to the victim of the offense, or which the court is not satisfied that the defendant can pay in full within a reasonable time. The court shall not sentence the defendant to pay a fine unless . . . "); Final Report §3302(2) ("When a defendant is sentenced to pay a fine, the court may provide for the payment to be made within a specified period of time or in specified installments. If no such provision is made a part of the sentence, the fine shall be payable forthwith."); Final Report §3302(3) ("When a defendant is sentenced to pay a

fine, the court shall not impose at the same time an alternative sentence to be served in the event that the fine is not paid.").

Lopez's citations to 42 Pa.C.S. §9726(d) and 18 Pa.C.S. §1106(c)(2) are similarly inapt. Section 9726(d) applies only to the imposition of fines, *see* 42 Pa.C.S. §9726(d) ("In determining the amount and method of payment of a fine, the court shall take into account the financial resources of the defendant and the nature of the burden that its payment will impose."), and Section 1106 is applicable exclusively to restitution, *see* 18 Pa.C.S. §1106(c)(2) ("In determining the amount and method of restitution, the court . . . "). Neither statute concerns mandatory costs. Further, these statutes include express references to the time of sentencing. *See* 42 Pa.C.S. §9726(a) ("The court may, as authorized by law, sentence the defendant only to pay a fine, when, having regard to the nature and circumstances of the crime and to the history and character of the defendant, it is of the opinion that the fine alone suffices."); 42 Pa.C.S. §9726(b) ("The court may sentence the defendant to pay a fine in addition to another sentence, either involving total or partial confinement or probation, when . . . "); 42 Pa.C.S. §9726(c) ("The court shall not sentence a defendant to pay a fine unless it appears of record that . . . "); 18 Pa.C.S. §1106(c)(2) ("At the time of sentencing the court shall specify the amount and method of restitution."). It is these explicit references to the time of sentencing that reflect the legislature's "inten[t] [for] the determination to be made at sentencing[,]" Appellant's Brief at 20, not the nontemporal "amount and method" language.

Finally, while we are not unmindful or unsympathetic to the various policy concerns raised by the parties, *amici*, and the dissent, these considerations do not alter our legal analysis. There is the important countervailing policy interest in shifting the burden of

paying the costs of prosecution from the public fisc onto financially able wrongdoers. *See Commonwealth v. Garzone*, 34 A.3d 67, 80 (Pa. 2012) ("We have no doubt that, as a matter of pure policy, the notion that the costs of crime should be shifted from the public fisc onto financially able wrongdoers is a legitimate one."). More fundamentally, our task is not to weigh the competing policy interests and determine the optimal rule as a matter of policy. Rather, we are construing the meaning of the existing Rule 706(C) promulgated through the rules committee process and previously adopted by this Court. This calls for application of the rules of construction to the plain language of the rule considered in context, not a *de novo* assessment of the relative merits of the parties' interpretation of Rule 706(C) as a policy matter.[11]

**IV.**

For the foregoing reasons, we hold Rule 706(C) does not require a trial court to consider a defendant's ability to pay prior to imposing mandatory court costs at sentencing. Accordingly, the order of the Superior Court is affirmed.

Chief Justice Baer and Justices Wecht, Mundy and Brobson join the opinion.

Justice Donohue files a dissenting opinion in which Justice Todd joins.

---

[11] Contrary to the dissent's suggestion, *see* Dissenting Opinion at 13 n.7, our determination that policy considerations cannot supersede the clear meaning of Rule 706(C) as reflected in its plain language, the comment to the rule, statutes *in pari materia*, and the pertinent case law, is entirely consistent with the governing rules of construction. *See* 1 Pa.C.S. §1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").